STATE of Tennessee, Appellee,

v.

James Wayne ADKISSON, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 8, 1994.

Charles W. Burson, Atty. Gen. & Reporter, Eugene J. Honea, Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen., Cheryl A. Blackburn, Asst. Dist. Atty. Gen., Nashville, for appellee.

Richard McGee (Appeal Only), R.N. "Bo" Taylor (Trial Only), Nashville, for appellant.

## OPINION

JONES, Judge.

The appellant, James Wayne Adkisson, was convicted of conspiring to sell, manufacture or deliver a Schedule VI controlled substance in excess of seventy pounds, a Class B felony, by a jury of his peers. The trial court found that the appellant was a standard offender and imposed a Range I sentence consisting of a fine in the sum of $100,000 and confinement for twelve (12) years in the Department of Correction.

Four issues are presented for review. The appellant contends that the evidence adduced during the trial is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty beyond a reasonable doubt. He further contends that the trial court committed error of prejudicial dimensions by (a) permitting the assistant district attorney general to ask a defense witness about his prior drug dealings, (b) refusing to suppress evidence seized from his home, and (c) refusing to permit defense counsel to

explore a witness's "substantial incentive" to testify favorably for the state.

The judgment of the trial court is reversed. This cause is remanded to the trial court for a new trial.

The appellant and John M. Kneisel met approximately three years prior to the dates in question. During the ensuing years, they engaged in numerous marijuana transactions. It appears that the largest sale involved five pounds. As a general rule, the parties engaged in a drug sale on a monthly basis. However, the intervals varied at times. Kneisel described his relationship with the appellant as an "ongoing business."

Grant Davis moved into the appellant's residence. Davis told the appellant about a telephone conversation that he had with David Shelton. According to Davis, Shelton wanted to know if he, Davis, knew someone capable of purchasing fifty pounds of marijuana. The appellant advised Davis that he knew someone who could make a purchase of this magnitude.

On April 5, 1990, Davis advised Shelton that he had someone interested in purchasing fifty pounds of marijuana. Shelton, who was living in Ohio, took Davis's telephone number and address. He advised Davis that a "local man," a resident of Nashville, would contact him regarding the sale. Shelton immediately called the Vice Division of the Metropolitan Police Department, advised an officer of Davis's interest in purchasing fifty pounds of marijuana, and he furnished the officer with the information Davis had given him. The next day, Officer Allen Mitchell called Davis and discussed selling one hundred pounds of marijuana to Davis. Mitchell told Davis that the price would be $800 per pound.

The appellant called Kneisel and attempted to negotiate the sale of fifty pounds of marijuana for $1,050 per pound. Kneisel advised the appellant that the price was too high. Later, the appellant advised Kneisel that he could purchase the marijuana at the price quoted to Davis, $800 per pound, if Kneisel would give him eight pounds for arranging the sale. Kneisel agreed.[1]

Davis contacted Mitchell on April 17, 1990. They agreed to meet in the parking lot of a grocery store the following morning to consummate the sale of the marijuana. The appellant advised Kneisel that the "deal" had been arranged and that Kneisel was to meet with the appellant the following morning. Kneisel was advised to bring his pistol.

On the morning of April 18, 1990, Kneisel went to the appellant's residence, where he met Grant Davis for the first time. The three men discussed the sale as well as the precautions that should be taken. It was agreed that Davis and Kneisel, who had brought $38,950 in a paper sack, would meet Mitchell. When they left to make the exchange, the appellant followed in his vehicle.

When Mitchell met Davis and Kneisel, Davis took the sack containing the money, sat in Mitchell's vehicle, and showed Mitchell the money. Mitchell told Davis to keep the money as he was going to get the marijuana. Davis rejoined Kneisel in the other vehicle. As Mitchell pulled from his parking space, he told the officers in the area that he had seen the money and that the officers should converge on the parking lot. Both Davis and Kneisel were arrested. Adkisson was arrested at his home a short time later.

## I.

### A.

■ When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt."[2] This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.

■ In determining the sufficiency of the evidence, this Court does not reweigh or

1. Kneisel testified that he had made arrangements to sell the marijuana he was to receive. Just as soon as the sale was consummated, he was going to deliver the marijuana to another person. He was to receive $1,150, or a profit of $350 per pound.

2. Tenn.R.App.P. 13(e).

reevaluate the evidence.[3] Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence.[4] To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.[5]

■ Questions concerning the credibility of the witnesses, the weight and value to be given to evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court.[6] In *State v. Grace,*[7] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."[8]

■ Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact.[9] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt.[10]

### B.

The appellant contends that "no rational trier of fact could have determined that he was a member of a conspiracy beyond a reasonable doubt due to the number of inconsistencies in the State's evidence." As previously stated, the jury resolves all conflicts and inconsistencies in the evidence adduced at trial.

The conversations between Davis and Officer Mitchell were recorded. During two of the telephone conversations, the appellant's voice could be heard in the background. When Mitchell asked Davis how much he was going to get for the marijuana, he had to ask the appellant. The appellant told him "ten fifty," meaning $1,050 a pound. Officers confiscated a piece of paper sitting on a coffee table in the appellant's living room. The writing on the paper corresponded to the quantity of marijuana to be purchased, the purchase price, and the prices quoted to Kneisel. Also, the officers confiscated a set of triple beam scales, a hand held set of scales, smoking paraphernalia, and a very small amount of marijuana. Davis continually referred to "we" and "us," meaning Davis and the appellant. Davis referred to Kneisel as "the money man" and "the doctor" who worked at Donelson Hospital.[11] Kneisel's motor vehicle was found at the appellant's home following his arrest.

■ The evidence contained in the record is sufficient to support a finding by a rational trier of fact that the appellant was guilty of conspiring to sell, manufacture or deliver a Schedule VI controlled substance in excess of seventy pounds beyond a reasonable doubt.[12] The evidence clearly established that (a) the appellant entered into an agreement with Davis and Kneisel to make an initial purchase of fifty pounds of marijuana and additional purchases thereafter to reach the agreed purchase of one hundred pounds of marijuana, (b) Davis negotiated the sale with Mitchell and he was to split the profits with the appellant, (c) the appellant convinced Kneisel to use his money to make the pur-

3. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim.App.), *per. app. denied,* (Tenn.1990).

4. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).

5. *State v. Cabbage,* 571 S.W.2d 832, 835 (1978).

6. *State v. Cabbage,* 571 S.W.2d at 835.

7. 493 S.W.2d 474 (Tenn.1973).

8. 493 S.W.2d at 476.

9. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

10. *State v. Tuggle,* 639 S.W.2d at 914.

11. Kneisel was a nurse. He was employed by Donelson Hospital.

12. Tenn.R.App.P. 13(e). *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

chase for an agreed price of eight pounds of marijuana, (d) the three men met on the morning the marijuana was to be purchased to plan the strategy to be implemented, and (e) Davis and Kneisel went to the parking lot of the grocery store, exhibited Kneisel's money to Mitchell, and were prepared to purchase the marijuana. In short, the requisite agreement and overt act were clearly established by the evidence.

This issue is without merit.

## II.

Rita Adkisson, the appellant's wife, testified as a defense witness. She portrayed the conspiracy as an agreement between Davis and Kneisel, who knew each other prior to the morning in question. She further testified that the appellant did not leave the residence on the morning in question. He helped her wash clothes and clean the house.

The assistant district attorney general began the cross-examination of Mrs. Adkisson with questions concerning the morning of April 18, 1990, the date the sale was to occur. The cross-examination continued:

Q. Have you ever known your husband to be involved in any drug dealing?

A. Yes.

Q. You have?

A. Yes.

Q. Do you know ...

A. Several years ago.

Q. Several years ago?

A. Yes.

Q. When was that?

A. When we first got married in '73.

Q. In '73? But you have known your husband not to be involved in any drug dealings since then?

A. Well, yes, I ...

MR. TAYLOR: Your Honor, I object.

THE COURT: Sustained.

Q. Mrs. Adkisson, on, where were you on June the 1st of 1990?

A. At home.

Q. At home? Were you home all day?

A. No.

Q. Isn't it true that Mr. Davis was still staying at your house on June the 1st of 1990?

A. Yes, it was.

Q. So you hadn't thrown him out some month or so after the arrest, had you?

A. That's correct.

Q. All right. And isn't it true that on that day you had to go run some errands for your husband?

A. Yes, I did.

Q. Okay. And those errands involved also doing other things that involved drug dealing, did they not?

A. No, it did not.

MR. TAYLOR: Your Honor, objection.

THE COURT: Sustained.

During a jury-out hearing, the assistant district attorney general told the trial court that the appellant was arrested for selling marijuana from his residence on June 1, 1990. She further told the trial court about the quantity of marijuana found at the residence when the appellant was arrested. It was related that Rita Adkisson had left the residence that morning, returned, and then the appellant told her to leave because someone was to deliver a quantity of marijuana. The assistant district attorney general asserted that she was entitled to impeach Rita Adkisson because Adkisson testified that "she is not aware of any drug dealing her husband's been involved with since 1973.... I think I'm allowed to impeach her about that [the events of June 1, 1990]." Defense counsel argued: "[I]t's a collateral matter, and I believe she should not be able to go into that any further." The trial court ruled:

THE COURT: I am of the opinion that the State has the right to cross-examine her and to impeach her if she has in fact been untruthful on the stand with regard to this matter.

\* \* \* \* \* \*

[I]t's now a question of impeachment of the witness. It is not for the purpose, I assume, General, of connecting this particular selection but it's for the purpose of impeaching the witness, is that correct?

GENERAL BLACKBURN: That's correct, Your Honor.

* * * * * *

THE COURT: I'm going to allow the State to cross-examine her for the purpose of impeachment with regard to the matter and I will properly instruct the Jury afterwards with regard to innocence.

The following colloquy appears in the record after the jury-out hearing:

Q. Mrs. Adkisson, isn't it true that on June the 1st of 1990 you went with Mr. Davis away from your residence?

A. Yes.

Q. Okay. And isn't it true that the reason you left there was because Mr. Davis didn't want to be involved in a marijuana deal that was going down?

A. No, it's not.

Q. That is not true? Isn't it true that in fact that during that time you left the house you called back to your husband and part of the inquiry was whether or not you had the money for the five other pounds of marijuana, the person lined up?

A. He asked me was it all right for me to come home—I asked him was it all right for me to come home, and he said yes.

Q. Okay. Well, the reason ...

A. Money, I don't remember that part.

Q. The reason you were concerned about coming home was you didn't want to be there when he bought fifteen pounds of marijuana from a guy named Doc, isn't that true?

A. I don't know if he was doing that, or not, he didn't mention that part of it to me.

Q. Now, when you got back to the house with Mr. Davis, you left shortly thereafter, did you not?

A. Yes, I did.

Q. And the reason why was because your husband told you to go see if you could locate an individual named Glen Frazier who had just been at your home and bought two pounds of marijuana?

A. That's correct. But he told me to go and check on Glen Frazier. He didn't say about go—that he had bought two pounds of marijuana, he didn't say that.

Q. And what had happened to Mr. Frazier was that he had been arrested by the police as he left your residence?

A. Which I did not know.

Q. All right. And when you left your residence to check on Mr. Frazier, isn't it true that you were stopped by the police?

A. Yes, it was.

Q. All right. And is it also true that after you left your residence that the police arrested your husband there in your residence?

A. Yes, it was.

Q. Okay. And they found not only two pounds of marijuana in your stove but some four pounds out in the back yard.

A. Right. But I did not know about that.

Q. But your testimony was that you didn't know anything about any drug dealing that your husband was involved in since 1973?

A. Well, I might have misquoted that. I'm sorry.

Q. All right. You forgot about this June 1st, 1990 situation?

A. No, I really didn't forget about it. I, you know, I just didn't bring it up—the way you were questioning me, I just answered the way I thought I was supposed to.

Q. Well, then, is it such a regular situation at your house that you would just forget about fifteen pounds of marijuana being delivered to your house?

A. No.

The first question that must be resolved is whether this issue has been waived.

### A.

The appellant, apparently dissatisfied with the attorney who represented him prior to and during the trial, retained another attorney to represent him post-trial and on appeal. Substitute counsel took a different view of this issue and the applicable law than trial counsel. Counsel made a multi-pronged attack in the motion for a new trial. The motion alleged:

3. The Trial Court erred in permitting the prosecuting attorney to ask the defense witness, Rita Adkinson [sic] questions regarding other drug related activity of the Defendant. The District Attorney's questioning resulted in the introduction of evidence which was so prejudicial that the Defendant's right to a fair trial as guaranteed by the new [sic] process provisions of the Tennessee Constitution (Article I, §§ 8 and 17) and the Fourteenth Amendment of the United States Constitution were violated.

The state's response to the motion stated: The trial court did not err in allowing witness Rita Adkisson to be questioned about other drug activity of the defendant and herself. Ms. Adkisson had denied any involvement of her husband or herself and opened the door to the appropriate cross-examination. The jury was given limiting instructions regarding how they were to use information regarding the defendant's other drug related activities. The defendant's defense was lack of knowledge and intent, the defendant's prior drug related activities were clearly relevant (Rule 404(b) Tennessee Rules of Evidence).

The appellant filed a supplemental motion for a new trial. This document alleged:

Additionally, the Defendant asserts that the Trial Judge, during the initial trial, erroneously allowed defense witness Rita Adkisson to testify regarding the Defendant's prior bad acts, thereby eviscerating the defendant's right not to testify. The testimony regarding the prior bad acts of the Defendant denied him of his right to a fair trial as guaranteed by the Due Process provisions of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 6, 8 and 9, of the Tennessee Constitution.

The state's response to the supplemental motion stated:

Other crimes' evidence is relevant pursuant to Rule 404(b) to show identity, intent or rebuttal or accident or mistake. The defendant does not have to open the door and the defendant does not have to take the stand for the State to introduce other crimes evidence pursuant to 404(b). The

evidence is substantive evidence. Evidence admitted pursuant to 404(b) relates to the defendant, and not to bad acts of the person testifying. The defendant, in his defense, had raised the issue of lack of intent. The State can, therefore, use other crimes' evidence to show intent....

The Judge held a hearing as required by 404(b) regarding the testimony of other crimes' evidence outside the presence of the jury and found its probative value was not outweighed by unfair prejudice.

Further, the witness Rita Adkisson testified on direct examination that she had no knowledge of her husband being involved with defendant Kneisel and defendant Davis in drug dealing.... When Ms. Adkisson so testified, her credibility could be attacked by showing that she had personal knowledge of drug dealing which involved defendant Davis which took place after the arrest in this case (June 1, 1990). Ms. Adkisson was also taken into custody on June 1, 1990.

In this Court, the appellant relies upon the United States and Tennessee Constitutions. He also argues that Rules 404(b), 608 and 609, Tenn.R.Evid., are not applicable in this case. The state relies upon Rules 607 and 613, Tenn.R.Evid. The state asserts for the first time that the assistant district attorney general was impeaching Rita Adkisson based on prior inconsistent statements. The state has abandoned its reliance on Rule 404(b), Tenn.R.Evid. As an alternative, the state submits that if the trial court's ruling constituted error, it was harmless.

■ In summary, both the appellant and the state have abandoned the legal theories asserted during the jury-out hearing. Both parties asserted new legal theories for their respective positions post-trial. In this Court, the appellant has asserted additional legal theories to support his position and the state has deleted some of the grounds it asserted incident to the motion for a new trial while adding new legal theories to support its position.

(1)

■ In this jurisdiction, a party is bound by the ground asserted when making an

objection. The party cannot assert a new or different theory to support the objection in the motion for a new trial or in the appellate court.[13] As this Court stated in *State v. Aucoin:* [14] "[A] defendant may not object to the introduction of evidence on one ground, abandon this ground, and assert a new basis or ground for the objection in this Court." [15] This rule has been applied when a party makes an objection based upon a non-constitutional ground, abandons that ground, and asserts a constitutional ground for the objection post-trial.[16]

 When, as here, a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for a new trial and in this Court, the party waives the issue.[17] This theory finds its origin in three well-established rules. First, as a general rule, a party will not be permitted to assert an issue for the first time in the appellate court. Second, an appellate court will limit its decision to the ground asserted when the trial court made its ruling. Third, an appellate court will not permit a party to take advantage of its adversary when it is too late to remedy the basis of the objection.

In *State v. Brock*,[18] the accused objected to a question propounded by the assistant district attorney general on the ground the question exceeded the scope of redirect examination. The objection was overruled. In this Court, the accused asserted that the question was improper because "it pertained to a collateral matter and deprived appellant of his right to confront" a witness. In ruling, this Court said: "The trial judge cannot be put in error on grounds raised for the first time on appeal when the objection at trial was based on another ground which was declared insufficient." [19]

In *State v. Davis*,[20] the accused objected to medical records establishing the blood type of the victim on the ground of "Rule 16 of Discovery and Relevancy." The objection was overruled. In this Court, the accused contended that the admission of the medical records "violated his Sixth Amendment constitutional right to confront witnesses." This Court said in ruling: "This ground for objection was not raised in the trial court; hence, it is waived." [21]

In *State v. Dobbins*,[22] the accused moved the trial court to grant a mistrial on the ground his statement indicated that he "was involved in drugs, a collateral, illegal act, which was highly prejudicial." In this Court, the appellant also asserted that the statement was inadmissible because "it was made without *Miranda* warnings." In holding the latter ground had been waived, this Court said: "The defendant did not predicate his motion for a mistrial on the ground the statement was made without *Miranda* warnings. It is elementary that a party may not take one position regarding an issue in the trial

---

**13.** *State v. Harris*, 839 S.W.2d 54, 65–66 (Tenn. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Gregory*, 862 S.W.2d 574, 578 (Tenn.Crim.App.1993); *State v. Matthews*, 805 S.W.2d 776, 781 (Tenn.Crim. App.), *per. app. denied*, (Tenn.1990); *State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn.Crim.App. 1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); *State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1988); *State v. Davis*, 751 S.W.2d 167, 171 (Tenn.Crim.App.), *per. app. denied* (Tenn.1988); *State v. Brock*, 678 S.W.2d 486, 489–90 (Tenn.Crim.App.), *per. app. denied*, (Tenn. 1984).

**14.** *State v. Aucoin*, 756 S.W.2d 705 (Tenn.Crim. App.1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989).

**15.** 756 S.W.2d at 715.

**16.** *State v. Dobbins*, 754 S.W.2d at 641; *State v. Davis*, 751 S.W.2d at 171; *State v. Brock*, 678 S.W.2d at 490.

**17.** *State v. Matthews*, 805 S.W.2d at 781; *State v. Aucoin*, 756 S.W.2d at 715; *State v. Dobbins*, 754 S.W.2d at 641; *State v. Davis*, 751 S.W.2d at 171; *State v. Brock*, 678 S.W.2d at 490.

**18.** 678 S.W.2d 486 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1984).

**19.** 678 S.W.2d at 490.

**20.** 751 S.W.2d 167 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1988).

**21.** 751 S.W.2d at 171.

**22.** 754 S.W.2d 637 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1988).

court, change his strategy or position in midstream, and advocate a different ground or reason in this Court.... Thus, this ground has been waived." [23]

The appellant has waived this issue. Consequently, this Court will not consider the issue unless the ruling of the trial court and the examination of the assistant district attorney general constituted plain error, or, in the alternative, this Court in the exercise of its discretion opts to consider the merits of the issue.

**23.** 754 S.W.2d at 641.

**24.** Rule 13(b), Tenn.R.App.P., states in part: "Review generally will extend only to those issues presented for review."

**25.** Tenn.R.App.P. 36(a). *See State v. Anthony,* 836 S.W.2d 600, 605 (Tenn.Crim.App.1992); *State v. Dies,* 829 S.W.2d 706, 709 (Tenn.Crim. App.1991); *Matter of Throneberry,* 754 S.W.2d 633, 636 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1988); *State v. Haynes,* 720 S.W.2d 76, 85 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1986).

**26.** Tenn.R.App.P. 3(e). *See State v. Sowder,* 826 S.W.2d 924, 926 (Tenn.Crim.App.1991), *per. app. denied,* (Tenn.1992); *State v. Gilmore,* 823 S.W.2d 566, 570 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1991); *State v. Lawson,* 776 S.W.2d 139, 140 n. 1 (Tenn.Crim.App.1989); *State v. Blunkall,* 731 S.W.2d 72, 74 (Tenn.Crim.App.) *per. app. denied,* (Tenn.1987).

**27.** Tenn.R.App.P. 27(a)(4). *See Villers v. State,* 833 S.W.2d 98, 99 n. 1 (Tenn.Crim.App.1991), *per. app. denied,* (Tenn.1992); *State v. Matthews,* 805 S.W.2d 776, 778 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1990); *State v. Gauldin,* 737 S.W.2d 795, 797–98 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1987).

**28.** Tenn.R.App.P. 13(b); Tenn.R.Crim.P. 52(b).

**29.** *State v. Bane,* 853 S.W.2d 483, 488 (Tenn. 1993) (whether issues which were not raised in the trial court should be considered in the appellate court); *State v. Suttles,* 767 S.W.2d 403, 405–06 (Tenn.1989) (whether remarks of the trial court should be considered when no contemporaneous objection was made); *State v. Ogle,* 666 S.W.2d 58, 60 (Tenn.1984) (whether a *Bruton* violation should be considered when no contemporaneous objection was made); *State v. Parton,* 817 S.W.2d 28, 35 (Tenn.Crim.App.1991) (whether the accused was entitled to a new trial when the trial extended into the late night and early morning hours of the following day). *See State v. Reeves,* 610 S.W.2d 730, 731 (Tenn.Crim.App. 1980).

## (2)

As a general rule,[24] appellate review is limited to issues that are (a) properly preserved for review in the trial court,[25] (b) contained in a motion for a new trial, when the accused has been afforded a jury trial,[26] and (c) properly presented for review in this Court.[27] However, this Court may, in the exercise of its discretion,[28] consider an issue which has been waived due to a procedural default,[29] waived due to a change in legal theory,[30] or has not been presented for review by either party.[31]

**30.** *See State v. Harris, supra; State v. Matthews, supra; State v. Aucoin, supra; State v. Dobbins, supra; State v. Billy Joe Carter, et al.,* Hamblen County No. 285, 1989 WL 66300 (Tenn.Crim. App., Knoxville, June 19, 1989) (statement made to police regarding location of weapon used to stab victim); *State v. Winslow Watson,* Sullivan County No. 849, 1989 WL 56788 (Tenn.Crim. App., Knoxville, May 31, 1989), *per. app. denied,* (Tenn.1989). *See State v. Woods,* 806 S.W.2d 205, 210 (Tenn.Crim.App.1990), *cert. denied,* 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992). *Cf. State v. Davis,* 751 S.W.2d 167, 171 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1988); *State v. Brock,* 678 S.W.2d 486, 489–90 (Tenn. Crim.App.), *per. app. denied,* (Tenn.1984).

**31.** Tenn.R.App.P. 13(b), Tenn.R.Crim.P. 52(b). *See State v. Newsome,* 778 S.W.2d 34, 35 (Tenn. 1989) (whether guilty plea was constitutionally infirm); *Delbridge v. State,* 742 S.W.2d 266, 267 (Tenn.1987) (whether there was a factual basis for post-conviction relief); *State v. Goins,* 705 S.W.2d 648, 650 (Tenn.1986) (whether multiple convictions for concealing stolen property violated the constitutional prohibitions against double jeopardy contained in the Tennessee Constitution); *State v. Braden,* 867 S.W.2d 750, 764–65 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1993) (whether the Community Corrections Act sentence was legal); *State v. Seagraves,* 837 S.W.2d 615, 617–18 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1992) (whether prosecution for involuntary manslaughter was barred by the statute of limitations); *State v. Sowder,* 826 S.W.2d 924, 929 (Tenn.Crim.App.1991), *per. app. denied,* (Tenn.1992) (whether the fine imposed was legal); *State v. Holt,* 801 S.W.2d 518, 522 (Tenn. Crim.App.), *per. app. denied,* (Tenn.1990) (whether the accused's conduct was proscribed by the statutory offense charged in the indictment); *State v. Brown,* 693 S.W.2d 369, 370–71 (Tenn. Crim.App.1985) (whether the indictment charged the offense of which the accused was convicted); *State v. Griffith,* 649 S.W.2d 9, 11 (Tenn.Crim. App.1982), *per. app. denied,* (Tenn.1983) (whether the indictment gave the accused notice that the sentence for the offense would be enhanced for employing a firearm during the commission of a

Historically, the United States Supreme Court and the appellate courts of this state addressed egregious errors [32] appearing on the face of the record in both civil [33] and criminal [34] cases when the parties failed to address the errors. On occasion, the courts addressed such errors when there had been a waiver of the error in either the trial court or the appellate court.[35] Eventually, the United States Supreme Court,[36] the Tennessee Supreme Court,[37] and the Court of Appeals [38] adopted rules which permitted the recognition of errors that had not been raised by the parties.

The Tennessee Rules of Criminal Procedure were adopted and approved by the General Assembly in 1978. The drafters of the rules provided for the recognition of "plain error" in criminal cases. Rule 52(b), Tenn. R.Crim.P., provides:

An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on

felony); *State v. Morgan,* 598 S.W.2d 796, 798 (Tenn.Crim.App.1979) (whether accused's conviction must be reversed when the arrest warrant was void and there was no written waiver of the right to be tried on an indictment and by a jury).

**32.** *See United States v. Olano,* 507 U.S. ──, ──, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508, 521–22 (1993) ("[t]he presence of alternate jurors during jury deliberations is not the kind of error that 'affect[s] substantial rights' independent of its prejudicial impact"); *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1, 13 (1985) ("the prosecutor's remarks cannot be said to rise to the level of plain error"); *Milliken v. Bradley,* 418 U.S. 717, 738 n. 18, 94 S.Ct. 3112, 3124 n. 18, 41 L.Ed.2d 1069, 1087 n. 18 (1974); *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129, 1176 (1940) ("the exceptional circumstances which call for an invocation of [the plain error rule] are not present here"); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936).

**33.** *See Sibbach v. Wilson & Co.,* 312 U.S. 1, 16, 61 S.Ct. 422, 427, 85 L.Ed. 479, 486 (1941); *Kessler v. Strecker,* 307 U.S. 22, 34, 59 S.Ct. 694, 700, 83 L.Ed. 1082, 1090 (1939); *Mahler v. Eby,* 264 U.S. 32, 45, 44 S.Ct. 283, 288, 68 L.Ed. 549, 557 (1924); *Medic Ambulance Serv. Inc. v. McAdams,* 216 Tenn. 304, 321, 392 S.W.2d 103, 111 (1965); *First Nat'l. Bank v. Russell,* 124 Tenn. 618, 628, 139 S.W. 734, 736 (1911); *Bryan v. Norfolk & W. Ry.,* 119 Tenn. 349, 357–58, 104 S.W. 523, 524 (1907); *Carter v. Jett,* 51 Tenn.App. 560, 574, 370 S.W.2d 576, 583, *cert. denied,* (Tenn.1963); *Life & Cas. Ins. Co. v. Robertson,* 6 Tenn.App. 43, 73 (1927), *cert. denied,* (Tenn. 1928).

**34.** *See Silber v. United States,* 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798, 799 (1962); *United Brotherhood of Carpenters v. United States,* 330 U.S. 395, 411–12, 67 S.Ct. 775, 784, 91 L.Ed. 973, 987 (1947); *Weems v. United States,* 217 U.S. 349, 362, 30 S.Ct. 544, 547, 54 L.Ed. 793, 796 (1910); *Wiborg v. United States,* 163 U.S. 632, 658, 16 S.Ct. 1127, 1137, 41 L.Ed. 289, 298 (1896); *State v. Mackey,* 553 S.W.2d 337, 340 (Tenn.1977); *Manning v. State,* 500 S.W.2d

913, 914 (Tenn.1973); *Davidson v. State,* 223 Tenn. 193, 208–09, 443 S.W.2d 457, 464 (1969); *Huffman v. State,* 200 Tenn. 487, 494–95, 292 S.W.2d 738, 741 (1956); *Baldwin v. State,* 213 Tenn. 49, 53, 372 S.W.2d 188, 189–90 (1963); *Farmer v. State,* 201 Tenn. 107, 114, 296 S.W.2d 879, 883 (1956); *Lee v. State,* 132 Tenn. 655, 656, 179 S.W. 145 (1915); *Johnson v. State,* 580 S.W.2d 789, 790 n. 1 (Tenn.Crim.App.1978), *cert. denied,* (Tenn.1979); *Sherod v. State,* 4 Tenn. Crim.App. 344, 348, 470 S.W.2d 860, 862 (1971).

**35.** *New York Cent. R.R. v. Johnson,* 279 U.S. 310, 318–19, 49 S.Ct. 300, 303–04, 73 L.Ed. 706, 710–11 (1929); *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345, 346 (1926). *See Crawford v. United States,* 212 U.S. 183, 194, 29 S.Ct. 260, 264, 53 L.Ed. 465, 470 (1908).

**36.** Rule 24.1(a) of the United States Supreme Court states in part: "At its option, however, the Court may consider a plain error not among the questions presented but evident from the record and otherwise within its jurisdiction to decide." This rule became effective on January 1, 1990. However, in practice it has been a part of the Court's rules for many years. *See Silber v. United States,* 370 U.S. at 718, 82 S.Ct. at 1288, 8 L.Ed.2d at 799; *United Brotherhood of Carpenters v. United States,* 330 U.S. at 411–12, 67 S.Ct. at 784, 91 L.Ed. at 987; *Sibbach v. Wilson & Co.,* 312 U.S. at 16, 61 S.Ct. at 427, 85 L.Ed. at 486; *Mahler v. Eby,* 264 U.S. at 45, 44 S.Ct. at 288, 68 L.Ed. at 557; *Weems v. United States,* 217 U.S. at 362, 30 S.Ct. at 547, 54 L.Ed. at 796.

**37.** *See Medic Ambulance Serv. Inc. v. McAdams,* 216 Tenn. at 321, 392 S.W.2d at 111.

**38.** *See Carter v. Jett, supra,* where it was said that "the rules of this Court reserve to the Court the right to 'notice an error overlooked by counsel' in the their assignments of error. Rule 12 of the Court of Appeals." 51 Tenn.App. at 574, 370 S.W.2d at 583. In *Life & Cas. Ins. Co. v. Robertson, supra,* it was also said that "the rules of this court reserve to the court the right to 'notice an error overlooked by counsel' in their assignments of error...." 6 Tenn.App. at 73.

appeal, in the discretion of the appellate court where necessary to do substantial justice.[39]

This rule is a restatement of the common law and rules of court that existed prior to its enactment.[40] It provides the appellate court with "a means for the prompt redress of miscarriages of justice." [41] However, the rule and the Advisory Comments [42] make it clear that consideration of issues pursuant to the rule rests within the sound discretion of the appellate court.

The Tennessee Rules of Appellate Procedure were adopted and approved by the General Assembly in 1979. The drafters of these rules provided for the recognition of issue *sua sponte* by the appellate courts. Rule 13(b), Tenn.R.App.P., provides:

Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.

This rule, like Rule 52(b), Tenn.R.Crim.P., is a restatement of the common law and the rules of court that existed prior to its enactment. The rule and the Advisory Commission Comment make it clear that consideration of issues pursuant to this rule rests within the sound discretion of the appellate court.

■ In summary, this Court is required to consider "whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review." [43] This court *"may in its discretion* consider other issues in order, among other reasons: (1) to prevent needless litigation,[44] (2) to prevent injury to the interests of the public,[45] and (3) to prevent prejudice to the judicial process," [46] to prevent manifest

**39.** This rule was modeled after Rule 52(b), Fed. R.Crim.P. The Federal rule states:
"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule is based on the language contained in *United States v. Atkinson*, 297 U.S. at 160, 56 S.Ct. at 392, 80 L.Ed. at 557. *See United States v. Olano*, 507 U.S. at ——, 113 S.Ct. at 1779, 123 L.Ed.2d at 521; *United States v. Young*, 470 U.S. at 7, 105 S.Ct. at 1042, 84 L.Ed.2d at 7.
Rule 103(d), Tennessee Rules of Evidence, also addresses the topic of "plain error." The Rule states: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." The Advisory Commission Comment to the rule states: "Part (d) recognizes that some errors are so plain and harmful that a trial judge can be reversed despite absence of objection. See T.R.A.P. 36(b), T.R.Crim.P. 52(b), and *State v. Ogle*, 666 S.W.2d 58 (Tenn.1984) (reversing for *Bruton* error not raised in the trial court or Court of Criminal Appeals)."

**40.** *See United States v. Olano*, 507 U.S. at ——, 113 S.Ct. at 1776, 123 L.Ed.2d at 518; *United States v. Frady*, 456 U.S. 152, 163 n. 13, 102 S.Ct. 1584, 1592 n. 13, 71 L.Ed.2d 816, 827 n. 13 (1982); *Bihn v. United States*, 328 U.S. 633 n. 3, 638, 66 S.Ct. 1172, 1174 n. 3, 90 L.Ed. 1485, 1488 n. 3 (1946); *United States v. Del Llano*, 354 F.2d 844, 848 (2nd Cir.1965).

**41.** *United States v. Frady*, 456 U.S. at 163, 102 S.Ct. at 1592, 71 L.Ed.2d at 827.

**42.** The Advisory Commission Comment which accompanies Rule 52(b) state in part: "Plain error may, not must, be noticed by the appellate court, even where substantial justice is involved." *See United States v. Olano*, 507 U.S. at ——, 113 S.Ct. at 1778, 123 L.Ed.2d at 520.

**43.** Tenn.R.App.P. 13(b). *See State v. Seagraves*, 837 S.W.2d 615, 617–18 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1992); *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn.Ct.App.), *per. app. denied*, (Tenn.1988).

**44.** *State v. Davis*, 613 S.W.2d 218, 219 (Tenn. 1981) (whether an accused can be convicted and punished for both burglary and grand larceny when the two offenses arose out of the same criminal episode).

**45.** Tenn.R.App.P. 13(b). *See State v. Davis*, 613 S.W.2d at 219.

**46.** Tenn.R.App.P. 13(b). *See State v. Davis*, 613 S.W.2d 218 at 219 (whether an accused can be convicted and punished for both burglary and grand larceny when the two offenses arose out of the same criminal episode); *State v. Luther E. Fowler*, Hamilton County No. 03–C–01–9207–CR–00249, 1993 WL 278468 (Tenn.Crim.App., Knoxville, July 27, 1993) (whether conviction should be set aside and the indictment dismissed due to a violation of Rule 8(a), Tenn.R.Crim.P.).

In *Everett v. State*, 528 S.W.2d 25, 31 (Tenn. 1975), Justice Henry stated in his dissenting

injustice[47] or do substantial justice.[48]

## (a)

■ Before an error may be recognized pursuant to Rule 52(b), Tenn.R.Crim.P., the error must be "plain" and it must affect a "substantial right" of the accused. These terms are not self-defining.

■ The word "plain" "is synonymous with 'clear' or, equivalently 'obvious'."[49] A "substantial right" is a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense, and is constitutional in nature."[50] In short, a plain error is not just an error that is conspicuous.[51] Rather, it is an especially egregious error[52] that strikes at "the fair-ness, integrity or public reputation of judicial proceedings."[53]

■ The language used in Rule 52(b), Tenn.R.Crim.P., makes it clear that appellate courts are to use it "sparingly" in recognizing errors that have not been raised by the parties or have been waived due to a procedural default.[54] As the Fifth Circuit Court of Appeals said in *United States v. Gerald:*[55]

> The plain error rule is not a run-of-the-mill remedy. The intention of the rule is to serve the ends of justice; therefore it is invoked 'only in exceptional circumstances [where necessary] to avoid a miscarriage of justice.'[56]

Thus, this Court should only recognize errors pursuant to rule 52(b) that "seriously affect

opinion: "[A]ppellate courts in the public interest, may, *sua sponte* note errors to which no exception has been taken if errors are obvious or if they seriously affect fairness, integrity or public reputation of judicial proceedings."

**47.** *State v. Goins*, 705 S.W.2d 648, 650 (Tenn. 1986) (whether multiple convictions for concealing stolen property over the value of $200 may stand under the Double Jeopardy Clause of the Tennessee Constitution, Art. I, § 10); *Veach v. State*, 491 S.W.2d 81, 83 (Tenn.1973) (whether evidence for conviction of driving while license was revoked was sufficient when the statute providing for revocation of a driver's license was unconstitutional).

See *State v. Tony Nash*, Bradley County No. 284, 1992 WL 19277 (Tenn.Crim.App., Knoxville, February 6, 1992) (whether the accused was entitled to a new sentencing hearing when the offense was committed before the Tennessee Criminal Sentencing Reform Act of 1989 and was sentenced pursuant to the Act prior to its effective date).

**48.** Tenn.R.Crim.P. Rule 52(b). *See State v. Seagraves*, 837 S.W.2d at 618 (whether the accused's conviction was barred by the statute of limitations); *State v. Maynard*, 629 S.W.2d 911, 912–13 (Tenn.Crim.App.1981) (whether trial court should have suppressed evidence found during a warrantless search of the accused's residence).

See *State v. Earnest Fitzgerald Jackson*, Fayette County No. 7, 1990 WL 180319 (Tenn.Crim.App., Jackson, November 21, 1990) (whether issues that have been waived may be considered in the appellate court).

**49.** *United States v. Olano*, 507 U.S. at ——, 113 S.Ct. at 1777, 123 L.Ed.2d at 519.

**50.** *State v. David Hassell*, Shelby County No. 02–C–01–9202–CR–00038, 1992 WL 386311 (Tenn.

Crim.App., Jackson, December 30, 1992) slip op. at 11.

**51.** *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir.1988); *State v. David L. Hassell, supra,* slip op. at 11.

**52.** *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1, 12 (1985); *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816, 827 (1982). A "plain error" has also been defined as "grave errors which seriously affect substantial rights of the accused," *Wright v. United States*, 301 F.2d 412, 414 (10th Cir.1962), and "errors that result in a clear miscarriage of justice." *United States v. Campbell*, 419 F.2d 1144, 1145 (5th Cir.1969).

**53.** *United States v. Rodriguez*, 882 F.2d 1059, 1064 (6th Cir.1989). *See State v. Wooden*, 658 S.W.2d 553, 559 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1983). Where "plain error" is defined as error which "seriously affect[s] the fairness or integrity of the trial."

**54.** *United States v. DiBenedetto*, 542 F.2d 490, 494 (8th Cir.1976). In *DiBenedetto* the court said: "This court, along with courts in general, have applied the plain error rule sparingly and only in situations where it is necessary to do so to prevent a great miscarriage of justice." (Citations omitted). *See United States v. Young*, 470 U.S. at 16, 105 S.Ct. at 1046, 84 L.Ed.2d at 13, where the United States Supreme Court said: "Reviewing courts are not to use the plain-error doctrine to consider trial court errors not meriting appellate review absent timely objection. . . ."

**55.** 624 F.2d 1291 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981).

**56.** 624 F.2d at 1299.

the fairness, integrity or public reputation of judicial proceedings"[57] when necessary to prevent a miscarriage of justice.[58] This rule should not be invoked to recognize an error that is not plain or does not affect a substantial right of the accused.

**57.** *United States v. Olano,* 507 U.S. at ——, 113 S.Ct. at 1776, 123 L.Ed.2d at 518; *State v. Wooden,* 658 S.W.2d at 559; *State v. David L. Hassell, supra.* *See United States v. Atkinson,* 297 U.S. at 160, 56 S.Ct. at 392, 80 L.Ed. at 557.

**58.** *United States v. Young,* 470 U.S. at 15, 105 S.Ct. at 1046, 84 L.Ed.2d at 12; *United States v. Martin,* 757 F.2d 770, 771 (6th Cir.), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985); *State v. David L. Hassell, supra.* In *Kessler v. Strecker,* the United States Supreme Court said that an appellate court should exercise its discretion "only in clear cases and in exceptional circumstances." 307 U.S. at 34, 59 S.Ct. at 700, 83 L.Ed. at 1090.

**59.** *See State v. Newsome,* 778 S.W.2d at 35; *Delbridge v. State,* 742 S.W.2d at 267; *State v. Goins,* 705 S.W.2d at 650; *State v. Braden,* 867 S.W.2d at 764–765; *State v. Seagraves,* 837 S.W.2d at 617–18; *State v. Sowder,* 826 S.W.2d at 929; *State v. Holt,* 801 S.W.2d at 522; *State v. Beech,* 744 S.W.2d 585, 588 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1987); *State v. Brown,* 693 S.W.2d at 371; *State v. Griffith,* 649 S.W.2d at 11; *State v. Harless,* 607 S.W.2d 492, 494 (Tenn.Crim.App. 1980) (whether the trial court had constitutional power to impose a fine in excess of $50); *State v. Morgan,* 598 S.W.2d at 798. *See also State v. Draper,* 800 S.W.2d 489, 497 (Tenn.Crim.App. 1990).

Plain error has been recognized *sua sponte* in several unreported opinions of this Court. *See State v. Robert Glen Grissom, III,* Henderson County No. 02–C–01–9204–CC–00076, 1993 WL 64276 (Tenn.Crim.App., Jackson, March 10, 1993) (whether accused could be sentenced pursuant to the Community Corrections Act for a crime of violence); *State v. Danny Schultz Chevrolet, Inc.,* Loudon County No. 03–C–01–9104–CR–00116, 1992 WL 134452 (Tenn.Crim.App., Knoxville, June 17, 1992) (whether a corporation can be convicted of an offense that is punishable by confinement); *State v. Richard Lee Roach,* Hamilton County No. 03–C–01–9104–CR–00133, 1992 WL 70545 (Tenn.Crim.App., Knoxville, April 9, 1992) (whether the sentence imposed by the trial court was proper); *State v. James Kiser,* Hawkins County No. 122, 1990 WL 255 (Tenn. Crim.App., Knoxville, January 5, 1990) (whether statute proscribing offense was constitutional); *State v. Leslie Price [Ellis],* Hawkins County No. 97, 1987 WL 15529 (Tenn.Crim.App., Knoxville, August 11, 1987) (sufficiency of the indictment); *State v. Randall Harrell,* Washington County No. 219, 1987 WL 13453 (Tenn.Crim.App., Knoxville, June 9, 1987) (whether multiple sentences were for the same offense); *State v. Billy McGhee,*

Several reported opinions of the Supreme Court and this Court have cited Rule 52(b), Tenn.R.Crim.P., when considering an issue that has not been raised by the parties[59] or an issue that has been waived due to a procedural default.[60] However, neither

Shelby County No. 5, 1987 WL 10093 (Tenn. Crim.App., Jackson, April 29, 1987) (whether that the conduct of the accused was proscribed by the aggravated rape statute); *State v. Whittenburg,* Van Buren County No. 86–189–III, 1987 WL 7696 (Tenn.Crim.App., Nashville, March 12, 1987) (whether unreliable hearsay should have been admitted at the sentencing hearing); *Anthony R. Vaughn v. Herman C. Davis, Warden,* Maury County No. 86–36–III, 1986 WL 8770 (Tenn. Crim.App., Nashville, August 12, 1986) (whether petitioner's counsel failure to advise the petitioner of his right to file a *pro se* application for permission to appeal warranted relief); *State v. Eva Jean Seals,* Shelby County No. 171 (Tenn. Crim.App., Jackson, March 13, 1985) (whether the accused could be sentenced twice for the same criminal offense); *State v. Robert Lee Lurry,* Shelby County (Tenn.Crim.App., Jackson, July 12, 1984) (multiple convictions for same act); *State v. John A. Price,* Johnson County No. 38 (Tenn.Crim.App., Knoxville, June 1, 1984) (whether accused was convicted of a crime which was not charged in the indictment); *Kenneth Michael Peterson v. State,* Shelby County No. 52 (Tenn.Crim.App., Jackson, March 27, 1980), *per. app. denied,* (Tenn.1980) (whether kidnapping was a "triggering offense to an habitual criminal charge").

**60.** *State v. Suttles,* 767 S.W.2d 403, 405–06 (Tenn.1989) (whether remarks of the trial court should be considered when no contemporaneous objection was made); *State v. Ogle,* 666 S.W.2d at 60 (whether *Bruton* violation, which was not raised in the trial court, warranted a new trial); *State v. Parton,* 817 S.W.2d 28 at 35 (whether the accused was entitled to a new trial when trial extended into the late night and early morning hours of the following day); *State v. Moore,* 713 S.W.2d 670, 674 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1985) (court cited Rule 52(b), Tenn. R.Crim.P., in considering issues raised although the accused failed to file a motion for a new trial timely); *State v. Jackson,* 697 S.W.2d 366, 370 (Tenn.Crim.App.), *per. app. denied,* (Tenn.1985) (whether multiple convictions for aggravated assault was proper); *State v. Maynard,* 629 S.W.2d at 912–13 (whether the accused's motion to suppress should have been granted although the accused did not file a motion for a new trial). *See State v. Brown,* 653 S.W.2d at 767 (whether counsel advised the petitioner that he could file a *pro se* application for permission to appeal).

There are several unreported cases where the accused has requested this Court to consider a waived issue pursuant to Rule 52(b), Tenn.

the Supreme Court nor this Court has established guidelines for determining when such an issue should be considered.[61] Based upon the provisions of Rule 52(b) and a reading of federal and state decisions, the following factors should be considered by an appellate court when determining whether an error constitutes "plain error:"

a) the record must clearly establish what occurred in the trial court;[62]

b) a clear and unequivocal rule of law must have been breached;[63]

c) a substantial right of the accused must have been adversely affected;[64]

d) the accused did not waive the issue for tactical reasons;[65] and

R.App.P. *See State v. David R. Hassell, supra* (whether the trial court erred in instructing the jury that "premeditation can be formed in an instance," where the accused did not object to the instruction or include the issue in the motion for a new trial); *State v. James E. Rose*, Montgomery County No. 01–C–01–9011–CC–00298, 1991 WL 101870 (Tenn.Crim.App., Nashville, June 14, 1991) (whether sentence imposed violated *ex post facto* provision of the United States and Tennessee Constitutions); *State v. Leon Cole*, Shelby County No. 124, 1991 WL 61290 (Tenn. Crim.App., Jackson, April 24, 1991) (whether proof of other crimes was admissible as part of the state's case in chief); *State v. Clifford Dalton*, Hamblen County No. 281, 1989 WL 40890 (Tenn.Crim.App., Knoxville, April 27, 1989), *per. app. denied*, (Tenn.1989) (whether the accused was entitled to a new trial due to the state's failure to furnish exculpatory evidence); *State v. Donald Wesley Dodson*, McMinn County No. 161, 1989 WL 9583 (Tenn.Crim.App., Knoxville, February 8, 1989), *per. app. denied*, (Tenn.1989) (whether the grant of a new trial was warranted due to the assistant district attorney general's reference to the indictment process and the grand jury in summation when the accused did not object to the argument or request a curative instruction); *State v. Timothy Whittenburg*, Van Buren County No. 86–189–III, 1987 WL 7696 (Tenn.Crim.App., Nashville, March 12, 1987) (whether trial court should have considered hearsay information contained in resentence report where the accused did not object to the hearsay); *State v. Eva Jean Seals*, Shelby County No. 171 (Tenn.Crim.App., Jackson, May 13, 1985) (whether multiple sentences for the same offense were proper).

61. In *State v. Ogle, supra*, the Supreme Court set forth the specific criteria to be considered when there has been a *Bruton* violation.

In *State v. David L. Hassell, supra*, this Court set forth criteria for the consideration of plain error.

62. *State v. Roberts*, 755 S.W.2d 833, 835 (Tenn. Crim.App.1988). *See Sykes v. United States*, 373 F.2d 607, 612 (5th Cir.1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967); *Wunder v. State*, 705 P.2d 333, 335 (Wyo.1985). In *Roberts* this Court said:

Before an appellate court may consider an issue pursuant to Rule 52(b), Tenn.R.Crim.P.,

the issue must appear on the face of the record. In the case *sub judice* the record is silent concerning the pretrial investigation conducted by ... [trial counsel].... In Summary, the record transmitted to this Court is void of evidence which establishes that the defendant was denied the effective assistance of counsel during the pretrial investigation of his case. *See Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975).

755 S.W.2d at 835.

This requirement has been discussed in two unreported cases. In *State v. James Franklin Wampler*, Knox County No. 03–C–01–9101–CR–00021, 1991 WL 172992 (Tenn.Crim.App., Knoxville, September 6, 1991) *per. app. denied* (Tenn. 1992), this Court noted: "We have no way of knowing if the presentment was actually sent with the jury. We have no way of knowing what portion of the presentment was sent, assuming any of it was.... The record is not so clear, and we find no plain error." Slip op. at 14–15. In *State v. Larry Darnell Russell*, Shelby County No. 78, 1986 WL 5056 (Tenn.Crim.App., Jackson, April 30, 1986), *per. app. denied* (Tenn.1986), this Court commented: "[T]he responses to the defendant's questions were never uttered and no proffer was made. It is thus not at all plain that any error occurred." Slip op. at 2. *See James v. State*, 215 Tenn. 221, 229, 385 S.W.2d 86, 90 (1964), *cert. denied*, 381 U.S. 941, 85 S.Ct. 1777, 14 L.Ed.2d 705 (1965).

63. *Wunder v. State, supra*. In *United States v. Olano* the United States Supreme Court said: "At a minimum, the Court of Appeals cannot correct error pursuant to Rule 52(b) unless the error is clear under current law." 507 U.S. at ——, 113 S.Ct. at 1777, 123 L.Ed.2d at 519.

64. Tenn.R.Crim.P. 52(b).

65. *State v. Ogle*, 666 S.W.2d at 60. *See Johnson v. United States*, 318 U.S. 189, 200, 63 S.Ct. 549, 554, 87 L.Ed. 704, 713 (1943). This requirement precludes "any possibility of gambling for a favorable verdict and, should the verdict be unfavorable, resorting to appeal on errors which might have been obviated on objection." *United States v. Campbell*, 419 F.2d 1144, 1145 (5th Cir.1969).

e) consideration of the error is "necessary to do substantial justice." [66]

As previously stated, recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial.[67]

#### (b)

Rule 13(b), Tenn.R.App.P., provides an appellate court with wide discretion in recognizing issues that have been waived due to a procedural default or have not been raised by the parties. It also allows the appellate court to consider a limited number of issues that can be raised by the State of Tennessee.[68] Rule 52(b), Tenn.R.Crim.P., is limited to the recognition of error affecting the substantial rights of the accused.

The Advisory Commission Comment accompanying Rule 13 makes it clear that an appellate court should use the rule sparingly.[69]

#### (c)

 The recognition of error pursuant to Rule 13(b), Tenn.R.App.P., or Rule 52(b),

Tenn.R.Crim.P., does not necessarily result in the automatic reversal of the trial court's judgment. An error "may be so plain as to be reviewable under [Rule 13(b) or] Rule 52(b), yet the error may be harmless and therefore not justify a reversal." [70] As the Seventh Circuit Court of Appeals said in *United States v. Kerley:* [71]

[T]here is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even if the error had never been committed; hence 'plain error' must be of such a great magnitude that it probably changed the outcome of the trial.[72]

The appellate court must consider the error in the context of the entire record of the trial proceedings to determine if the error was harmless.[73]

 The applicability of the harmless error doctrine does not affect the analysis required when there has been a violation of a constitutional right.[74] Before an error of constitutional dimensions may be deemed harmless, the appellate court must find that the error was harmless beyond a reasonable

---

**66.** Tenn.R.Crim.P. 52(b).

**67.** *See United States v. Olano*, 507 U.S. at ——, 113 S.Ct. at 1777–78, 123 L.Ed.2d at 518; *United States v. Young*, 470 U.S. at 15–16, 105 S.Ct. at 1046–47, 84 L.Ed.2d at 15.

**68.** *See State v. Davis*, 613 S.W.2d at 219 (whether an accused can be convicted and punished for both burglary and grand larceny when the two offenses were committed during the same criminal episode).

**69.** The Advisory Commission Comment states in part: "It is intended that this discretion be sparingly exercised."

**70.** *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir.1978). This Court has applied the harmless error doctrine when relief has been sought pursuant to Rule 52(b), Tenn.R.Crim.P. *See State v. Alta Jean Krueger*, Knox County No. 03–C–01–9206–CR–00213, 1993 WL 391274 (Tenn.Crim. App., Knoxville, October 6, 1993) (including the portion of the premeditation instruction condemned in *State v. Brown*, 836 S.W.2d 530 (Tenn.1992), constituted harmless error); *State v. William Roberts*, Marshall County No. 01–C–01–9110–CC–00296, 1993 WL 266835 (Tenn.Crim. App., Nashville, July 15, 1993) (comments made by the trial judge were harmless); *State v. David*

*L. Hassell, supra,* (including the portion of the premeditation instruction condemned in *State v. Brown*, 836 S.W.2d 530 (Tenn.1992), constituted harmless error); *State v. Roy Morelock*, Sullivan County No. 739, 1987 WL 14283 (Tenn.Crim. App., Knoxville, July 21, 1987) (admission of hearsay evidence pursuant to the co-conspirator exception constituted harmless error).

**71.** 838 F.2d 932 (7th Cir.1988).

**72.** 838 F.2d at 937, quoting *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987).

**73.** *United States v. Young*, 470 U.S. at 16, 105 S.Ct. at 1046, 84 L.Ed.2d at 13; *United States v. Greene*, 578 F.2d 648, 654 (5th Cir.1978); *United States v. Segovia*, 576 F.2d 251, 253 (9th Cir. 1978); *United States v. Del Llano*, 354 F.2d 844, 848 (2nd Cir.1965). In *State v. Christopher Eric Gravley*, Knox County No. 1233, 1990 WL 19716 (Tenn.Crim.App., Knoxville, March 6, 1990), *per. app. denied*, (Tenn.1990), this Court said: "Whether or not an appellate court should recognize the error and grant relief in the absence of an objection in the trial court must depend upon the facts and circumstances of the particular case."

**74.** *See United States v. Lopez*, 575 F.2d at 685.

doubt.[75] Nor does this analysis change the rule that some constitutional violations require reversal due to the nature of the infraction.[76]

(3)

■■■ The issue presented by the appellant regarding the cross-examination of Mrs. Adkisson will be considered on its merits pursuant to Rule 13(b), Tenn.R.App.P., and Rule 52(b), Tenn.R.Crim.P.[77] The error is egregious. It is clearly established in the record, and the rule of law which governs this issue was, and is, clear and unambiguous. Moreover, a substantial right of the accused, the right to a fair and impartial trial, was adversely affected. Therefore, consideration of this issue is necessary to prevent a miscarriage of justice. The appellant did not waive this issue for tactical reasons. To the contrary, the matter was argued for an extended period of time before the trial court overruled his objection.

The evidence was not harmless. Both Davis and Kneisel were accomplices. The only evidence that the state offered to corroborate their testimony was (a) the police officer's testimony that he heard the appellant's voice in the background while he was talking to Davis on the telephone and (b) the

piece of paper containing notations that matched the quantity of marijuana to be purchased, the purchase price, and the prices quoted to Kneisel. Since Davis lived in the appellant's home, the piece of paper may have belonged to him. The state did not establish whose handwriting was on the paper.

■■■ It is a well-settled rule of law that an accused cannot be convicted of a felony on the uncorroborated testimony of an accomplice.[78] An accomplice is defined as a person who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime.[79]

■■■ The Supreme Court has spoken at length regarding the nature and sufficiency of the evidence necessary to corroborate the testimony of an accomplice. In *Sherrill v. State*[80] the court said:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to con-

---

75. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967). *See State v. Howell*, 868 S.W.2d 238, 259–62 (Tenn.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994) (applying harmless error analysis and finding that the error was harmless beyond a reasonable doubt); *State v. Deuter*, 839 S.W.2d 391, 396–97 (Tenn.1992) (applying *Chapman* and finding that the error was *not* harmless beyond a reasonable doubt); *State v. Hines*, 758 S.W.2d 515, 524 (Tenn.1988) (applying *Chapman* and finding that the error was *not* harmless beyond a reasonable doubt).

76. *See, e.g., Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), (erroneous reasonable doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (discrimination in the selection of the grand jury); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel during trial proceedings); *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946) (giving a jury instruction based upon an unconstitutional presumption); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (right to an impartial judge); *State v. Bobo*, 814 S.W.2d 353, 358 (Tenn.1991) (right to

trial by jury); *State v. Sams*, 802 S.W.2d 635, 641 (Tenn.Crim.App.1990), *per. app. denied*, (Tenn. 1991) (right to a public trial).

77. In federal cases, a change in legal theory also represents a waiver of the issue. A federal appellate court will not consider the waived issue absent a finding that the issue involves plain error within the meaning of Rule 52(b), Fed. R.Crim.P. *United States v. Mendez–Ortiz*, 810 F.2d 76, 78 (6th Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987).

78. *Boulton v. State*, 214 Tenn. 94, 96, 377 S.W.2d 936, 938 (1964); *Scott v. State*, 207 Tenn. 151, 155, 338 S.W.2d 581, 583 (1960); *Sherrill v. State*, 204 Tenn. 427, 433, 321 S.W.2d 811, 814 (1959); *Gable v. State*, 519 S.W.2d 83, 84 (Tenn. Crim.App.1974), *cert. denied* (Tenn.1975); *Scola v. State*, 4 Tenn.Crim.App. 485, 489, 474 S.W.2d 144, 145, *cert. denied* (Tenn.1971).

79. *See Monts v. State*, 214 Tenn. 171, 191, 379 S.W.2d 34, 43 (1964); *Clapp v. State*, 94 Tenn. 186, 194, 30 S.W. 214, 216 (1895).

80. 204 Tenn. 427, 321 S.W.2d 811 (1959).

nect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

This corroborative evidence need not be direct evidence, but the rule of corroboration is satisfied even though the evidence is entirely circumstantial. The corroboration need not of itself be adequate to support a conviction, but it must be sufficient to meet the requirements of the rule and it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.[81]

In short, the evidence must confirm in some manner that (a) a crime has been committed and (b) the accused committed the crime.[82] Evidence which merely casts a suspicion on the accused or establishes that he had an opportunity to commit the crime in question is inadequate to corroborate an accomplice's testimony.[83] If the state introduces evidence to corroborate the accomplice's testimony, the jury, as the trier of fact, must determine whether the evidence is sufficient to corroborate the testimony.[84]

Since the corroborating evidence in this case is slight, the likelihood of prejudicial error is enhanced. As the Supreme Court said in *State v. Carter*: [85]

> The line between harmless error and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard to convict beyond a reasonable doubt.[86]

In this case, the jury could conclude that the corroborating evidence was insufficient to support a conviction.

Recognition of this issue is consistent with the current decisions of this Court. In the past, this Court, in the exercise of its discretion, has opted to consider an issue which was waived due to a change in legal theory on the merits.[87] These decisions are predicated upon the theory that an accused should not be denied appellate review due to counsel's zeal in presenting an issue in its most favorable light. Furthermore, recognition of the error avoids needless litigation—a later suit for post-conviction relief predicated upon the denial of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution.

## B.

■ It is a well-established principle of law that the State of Tennessee has the right to cross-examine defense witnesses.[88] However, this right, like the right of the accused

**81.** 204 Tenn. at 435, 321 S.W.2d at 815.

**82.** *Boulton v. State*, 214 Tenn. at 98, 377 S.W.2d at 938.

**83.** *Boulton v. State*, 214 Tenn. at 99, 377 S.W.2d at 939.

**84.** *Sherrill v. State*, 204 Tenn. at 434, 321 S.W.2d at 814; *Stanley v. State*, 189 Tenn. 110, 116, 222 S.W.2d 384, 386 (1949); *Clapp v. State*, 94 Tenn. at 195, 30 S.W. at 217; *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn.Crim.App.1992), *per. app. denied* (Tenn.1993); *Hawkins v. State*, 4 Tenn. Crim.App. 121, 134, 469 S.W.2d 515, 520, *cert. denied* (Tenn.1971).

**85.** 714 S.W.2d 241 (Tenn.1986).

**86.** 714 S.W.2d at 248 (quoted with approval in *State v. Suttles*, 767 S.W.2d 403, 404 (Tenn. 1989)).

**87.** *State v. Harris*, 839 S.W.2d 54, 65–66 (Tenn. 1992) *cert. denied*, —— U.S. ——, 113 S.Ct. 1368,

122 L.Ed.2d 746 (1993) (voir dire examination); *State v. Gregory*, 862 S.W.2d at 578 (proof of other crimes); *State v. Matthews*, 805 S.W.2d at 781; *State v. Aucoin*, 756 S.W.2d at 715; *State v. Dobbins*, 754 S.W.2d at 641; *State v. Billy Joe Carter, et al.*, Hamblen County No. 285, 1989 WL 66300 (Tenn.Crim.App., Knoxville, June 19, 1989); *State v. Winslow Watson*, Sullivan County No. 849, 1989 WL 56788 (Tenn.Crim.App., Knoxville, May 31, 1989), *per. app. denied*, (Tenn. 1989). *Cf. State v. Davis*, 751 S.W.2d 167, 171 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1988); *State v. Brock*, 678 S.W.2d 486, 490 (Tenn.Crim. App.), *per. app. denied*, (Tenn.1984). *See State v. Woods*, 806 S.W.2d 205, 210 (Tenn.Crim.App. 1990), *cert. denied*, 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992).

**88.** *See* 81 Am.Jur.2d *Witnesses* § 802 (1992), where it is said "[I]n criminal cases the state has the right to cross-examine witnesses testifying on behalf of the accused, including the accused himself when he takes the witness stand...."

to cross-examine state witnesses, is subject to the restrictions created by the applicable statutes, rules of evidence, rules of criminal procedure, and the common law rules created by the appellate courts. Therefore, the state must structure its cross-examination of defense witnesses within the parameters of these laws.

One requirement which restricts the state's right to cross-examine defense witnesses is the propounding of proper questions. The question asked by the assistant district attorney general in this case, i.e., "Have you ever known your husband to be involved in any drug dealing" was highly improper. Such questions have been condemned by the appellate courts of this state.[89]

In *State v. Morgan*,[90] a witness was asked: "Do you have any prior felony convictions?" The Supreme Court ruled that this question was "too broad because it could elicit incompetent testimony."[91] In *Campbell v. State*,[92] the following question was propounded to the witness: "Have you ever been convicted of any crime?" This Court said that "[t]he question as asked was too broad and could well have elicited incompetent proof and thus was objectionable."[93]

The state's right to cross-examine defense witnesses is also limited to questions that are designed to elicit relevant evidence.[94] In the treatise *Tennessee Law of Evidence*,[95] the authors state:

Although Rule 611(b) follows the traditional wide-open approach to the scope of cross-examination, there are still many limits on the subjects that can be raised during cross-examination. One example is the concept of relevance: cross examination cannot delve into irrelevant matters.[96]

The term "relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[97] In short, evidence is relevant if it tends to prove a material issue.[98]

However, there are limitations on the relevant evidence that the state may elicit during the cross-examination of a defense witness. Tenn.R.Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The question asked by the assistant district attorney general sought to elicit irrelevant evidence from the witness, i.e., proof of independent crimes to establish the appellant's propensity or disposition to commit the crime alleged in the indictment. The admissibility of evidence for this purpose is clearly

---

**89.** *State v. Morgan*, 541 S.W.2d 385, 389 (Tenn. 1976); *Hatchett v. State*, 552 S.W.2d 414, 415 (Tenn.Crim.App.), *cert. denied*, (Tenn.1977); *Campbell v. State*, 4 Tenn.Crim.App. 100, 469 S.W.2d 506, 511 *cert. denied* (Tenn.1971). *See Cross v. State*, 142 Tenn. 510, 221 S.W. 489 (1920); *McMahan v. Tucker*, 31 Tenn.App. 429, 216 S.W.2d 356 (1948). *See Collard v. State*, 526 S.W.2d 112 (Tenn.1975).

**90.** 541 S.W.2d 385 (Tenn.1976).

**91.** 541 S.W.2d at 389.

**92.** 4 Tenn.Crim.App. 100, 469 S.W.2d 506 *cert. denied*, (Tenn.1971).

**93.** 469 S.W.2d at 511.

**94.** Tenn.R.Evid. 401 and 402. *See Monts v. State*, 214 Tenn. 171, 184, 379 S.W.2d 34, 40 (1964); *State v. Rhoden*, 739 S.W.2d 6, 11 (Tenn.

Crim.App.), *per. app. denied*, (Tenn.1987); *Taylor v. State*, 551 S.W.2d 331, 335 (Tenn.Crim.App.), *cert. denied*, (Tenn.1976); *State v. Braggs*, 604 S.W.2d 883, 886 (Tenn.Crim.App.), *per. app. denied*, (Tenn.1980); *Hobbs v. State*, 3 Tenn.Crim. App. 238, 240, 460 S.W.2d 377, 379, *cert. denied*, (Tenn.1970); Neil P. Cohen, et al., *Tennessee Law of Evidence* § 611.4 (2nd ed. 1990). Rule 402, Tenn.R.Evid., provides: "Evidence which is not relevant is not admissible."

**95.** Neil P. Cohen, et al., *Tennessee Law of Evidence* (2nd ed. 1990).

**96.** *Tennessee Law of Evidence* § 611.4.

**97.** Tenn.R.Evid. 401.

**98.** Advisory Commission Comment to Tenn. R.Evid. 401.

barred by the Tennessee Rules of Evidence and the common law rule.[99]

■ The Tennessee Rules of Evidence specifically provide that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait."[100] This evidence, standing alone, is deemed irrelevant, and, therefore, inadmissible.[101] However, if such evidence becomes relevant to establish a material issue, other than conduct conforming with a character trait, the trial court may in the exercise of its discretion, admit the evidence if it finds that the probative value of the evidence outweighs the danger of unfair prejudice.[102]

■ In this case, the state has not contended that the evidence was relevant to establish a material fact. Consequently, the evidence sought to be elicited was irrelevant, and, therefore, should not have been admitted.

■ Another restriction on the state's right to cross-examine defense witnesses is the prohibition against asking questions which seek a response that constitutes irrelevant evidence, and, when the witness fails to give the precise answer sought, asking a second question which also seeks a response of irrelevant evidence under the guise of impeaching the witness. The appellate courts have continually condemned this practice.[103] In *Hatchett v. State*,[104] the assistant district attorney general asked the accused: "Have you ever used illegal drugs?" The accused gave a negative answer. The assistant district attorney general than asked the accused if he had been convicted of the simple possession of marijuana, a misdemeanor offense. The trial court ordered the accused to answer the question. The accused admit-

ted that he had been convicted of the simple possession of marijuana. In reversing and remanded for a new trial, this Court said:

Since the question concerning prior possession of drugs was not proper, because it was irrelevant and prejudicial, the question concerning the conviction for possession of marijuana would not be allowed for impeachment proposes. The State cannot ask a witness an irrelevant but prejudicial question, and then, under the theory of impeachment, predicate a second irrelevant and prejudicial question upon the defendant's response to the first question.[105]

■ This is precisely what occurred here. The assistant district attorney general asked a question to elicit evidence that was totally irrelevant to the issues raised by the parties. When the witness did not respond in the manner that the assistant district attorney general desired, the trial court permitted the assistant to ask the witness questions about a matter that also was totally irrelevant to the issues under the guise of impeachment.

In summary, the assistant district attorney general infected the jury with prejudice against the appellant. The only purpose for introducing this evidence was to establish the appellant's propensity and disposition to commit the crime for which he was being tried. It was prejudicial error to introduce this evidence—evidence which was clearly irrelevant and inadmissible. As previously noted, this error involves a substantial right and more probably than not affected the verdict returned by the jury.[106]

### III.

■ The appellant moved to suppress the evidence seized by the police officers from his residence. He argued that (a) his arrest

---

**99.** *State v. Parton,* 694 S.W.2d 299, 303 (Tenn. 1985); *Young v. State,* 566 S.W.2d 895, 897 (Tenn.Crim.App.), *cert. denied,* (Tenn.1978).

**100.** Tenn.R.Evid. 404(b).

**101.** *State v. Parton,* 694 S.W.2d at 302.

**102.** Tenn.R.Evid. 404(b).

**103.** *Hatchett v. State,* 552 S.W.2d 414, 415 (Tenn. Crim.App.), *cert. denied,* (Tenn.1977); *McMahan*

*v. Tucker,* 31 Tenn.App. 429, 463, 216 S.W.2d 356, 371, *cert. denied,* (Tenn.1948). *See State v. West,* 844 S.W.2d 144, 149 (Tenn.1992); *Cross v. State,* 142 Tenn. 510, 516, 221 S.W. 489, 490 (1920).

**104.** 552 S.W.2d 414 (Tenn.Crim.App.), *cert. denied,* (Tenn.1977).

**105.** 552 S.W.2d at 415.

**106.** Tenn.R.App.P. 36(b).

was illegal because the police officers did not have the requisite probable cause to arrest him, and (b) the consent given to search the appellant's home was involuntary because it was obtained by the officers through coercion and duress. The trial court found that appellant's arrest was legal and that the consent given by the appellant and his wife to search the premises was voluntary.

The officers knew the appellant. He had been arrested by the Vice Section on two prior occasions and the appellant had cooperated with the officers in the past. The officers also knew that Davis had given the appellant's telephone number and address and the appellant had been heard in the background of telephone calls with Davis on two separate occasions. Both Davis and Kneisel implicated the appellant following their arrest in the parking lot of the grocery store. They advised the officers that the appellant had followed them in his vehicle, but neither was sure if he followed them to the grocery store parking lot.

An officer knocked on the front door of the appellant's residence. The appellant answered the door. The officer asked the appellant to step outside. When the appellant exited his residence, the officer arrested him. After reading the appellant the *Miranda* warnings, the officer advised the appellant that he wanted to search his home. Davis had mentioned that they had purchased one hundred pounds of marijuana in Oklahoma the previous week. The appellant wanted to know if the officers had a search warrant. The officer advised him that he did not have a search warrant, but he would obtain a warrant if the appellant did not consent to a search of his premises. He also advised the appellant that the other officers would remain and secure the residence until he returned with the search warrant.

The appellant and his wife conferred. The appellant admitted to the officers that there was a small quantity of marijuana and paraphernalia inside the residence. The officers advised the appellant that the discovery of those items would not compound his present

problem. Both the appellant and his wife, stating there was nothing to hide, voluntarily gave the officers permission to search the residence. The officers seized a set of triple beam scales, a hand-held set of scales, smoking paraphernalia, a pocket computer, .45 caliber ammunition, and a piece of paper containing writing that set forth the amount of marijuana to be purchased, the cost per pound, and what they had expected to receive from Kneisel per pound.

The appellant did not testify at the suppression hearing. His wife's testimony supported the testimony given by the officers. She admitted that she gave the officers permission to search the residence because they did not have anything to hide. The appellant's wife testified that she was aware officers could not enter without a search warrant and if she refused to permit the officers entry, they would have to procure a search warrant before making entry. She candidly admitted that no officer entered the residence until she consented to a search of the residence.

In this jurisdiction, the findings of fact made by a trial judge at the conclusion of a suppression hearing have the weight of a jury verdict. This Court will not set aside the judgment of the trial court unless the evidence adduced at the suppression hearing preponderates against the findings of fact.[107] When, as here, there is material evidence contained in the record to support the trial court's findings of fact, this Court is required to affirm the trial court's judgment.[108]

This issue is without merit.

## IV.

During the cross-examination of Grant Davis, defense counsel asked Davis if he had made "a deal" with the state in exchange for his testimony. Davis and defense counsel engaged in the following colloquy:

Q. Now I suppose there haven't been any deals offered to you for your testimony today, either?

A. No, sir.

107. *State v. Killebrew,* 760 S.W.2d 228, 233 (Tenn.Crim.App.1988).

108. *State v. Killebrew,* 760 S.W.2d at 233.

**Q.** You just came in here to tell the truth and be honest?

**A.** Yes, sir.

**Q.** No expectations of any benefit?

**A.** No, sir, I've already pleaded guilty.

**Q.** But you haven't been sentenced yet, have you?

**A.** No, sir.

**Q.** When is your sentencing?

**A.** Uh, next. . . .

**GENERAL BLACKBURN:** Objection, Your Honor.

**THE COURT:** Sustained.

Defense counsel did not advise the trial court why the date of the sentencing hearing was relevant. Defense counsel simply abandoned this line of questioning.

The appellant contends that the ruling of the trial court prohibited defense counsel from attempting "to establish Davis' bias and motive to falsify his testimony." A footnote in the appellant's brief stated: "If trial counsel had been allowed to further explore and develop his questioning of Mr. Davis, the record, perhaps, would have revealed more clearly whether Grant Davis had motive to fabricate his testimony." In other words, the appellant does not know what, if anything, could have been elicited from the witness.

■ The appellant's position is predicated upon a false premise. The trial court did not prohibit defense counsel from developing Davis' bias or motivation for testifying for the state. Defense counsel established that Davis had entered a plea of guilty to the offense; and he was to be sentenced after the conclusion of the trial. The date of the sentencing hearing was irrelevant to the inquiry.[109] Moreover, Davis testified that he had not entered into "a deal" to give evidence against the appellant. Defense counsel subsequently abandoned this line of questioning.

It is obvious that defense counsel was probing Davis to see if he could get him to admit that he had made "a deal" with the state. When it appeared to defense counsel that no promises had been made to Davis, counsel had exhausted the subject. Thus, it

was time to abandon the subject and move to another line of inquiry.

This issue is without merit.

SCOTT, P.J., and JULIAN P. GUINN, Special Judge, concur.

---

**109.** During the hearing on the motion for a new trial, the trial court stated: "I merely sustained an objection as to when the sentencing hearing was. Why is that relevant?"