IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 3, 2010

## STATE OF TENNESSEE v. MONTORIUS G. HERRON

**Direct Appeal from the Circuit Court for  Madison County
No. 09-15     Roy B. Morgan, Jr., Judge**

_____

**No. W2009-02493-CCA-R3-CD  - Filed November 16, 2010**

_____

The defendant, Montorius G. Herron, stands convicted of identity theft, a Class D felony, and theft of property under $500, a Class A misdemeanor.  The trial court sentenced him to eleven months, twenty-nine days in the county jail with a release eligibility of 75% for the misdemeanor conviction concurrent with twelve years as a career offender in the Tennessee Department of Correction with a release eligibility of 60% for the felony conviction.  On appeal, the defendant argues that the evidence was insufficient to support his conviction for identity theft and the trial court committed plain error by not charging fraudulent use of a credit card as a lesser-included offense of identity theft.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

George Morton Googe, District Public Defender, and Susan D. Korsnes, Assistant Public Defender, Jackson, Tennessee, for the appellant, Montorius G. Herron.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; James G. Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

In January 2009, a Madison County grand jury indicted the defendant, Montorius G. Herron, on two counts of vehicle burglary, Class E felonies; one count of theft of property under $500, a Class A misdemeanor; one count of theft of property over $500, a Class E felony; and two counts of identity theft, Class D felonies. The state dismissed one count of vehicle burglary, one count of identity theft, and the theft of property over $500 count before trial. The matter proceeded to trial by jury on May 13, 2009.

Daphne Joyner testified that on August 30, 2008, she went to Tequila Joe's in the Hamilton Hills Shopping Center in Jackson, Tennessee, to pick up her fiancé. She left her car in the parking lot for approximately twenty minutes. When she returned, she noticed that someone had broken the rear passenger window of her car and taken her purse. Her purse contained her wallet and important paperwork. She had cash and a Bancorp South debit card in the wallet. The "pin" number to the debit card was the last four digits of her social security number. Ms. Joyner testified that her social security number might have been on the paperwork in her purse. She immediately called Bancorp South and cancelled her card, and then she called the police. Ms. Joyner said that a Dunkin' Donuts employee recovered her purse from a dumpster at the Old Hickory Steakhouse and returned it to her. She testified that the cash and debit card were missing. Ms. Joyner said that she did not know the defendant, did not give him permission to enter her car, and did not give him permission to use her debit card.

Officer Jeff Herndon, of the Jackson Police Department, testified that on August 30, 2008, at approximately 2:20 a.m., he responded to an auto burglary call at 621 Old Hickory Boulevard. When he arrived, Ms. Joyner advised him that her rear passenger window was broken and that someone had taken her purse from under the front seat. She reported that she had $250, a Verizon cell phone, a Tennessee driver's license, and a Bankcorp South debit card in her purse.

On cross-examination, Officer Herndon confirmed that he photographed Ms. Joyner's car, but he did not know what happened to the photograph. To his knowledge, the police did not dust Ms. Joyner's car for fingerprints.

Amanda Jordan, a Vice President at Bancorp South, testified that her duties included deposit operations. She testified that Bancorp South's Anytime Teller Machines ("ATMs") operate by inserting and removing an ATM card and inputting a personal identification number. Ms. Jordan said that the ATM card bears the bank logo, the Master Card emblem, the card number, a magnetic strip, and the customer's name. She agreed that the customer's name and the card number were unique identifying features. Ms. Jordan testified that the magnetic strip on the card contained information, including the card number and security

features. She agreed that "a unique individual identification number [was] encoded into [the] card."

Ms. Jordan further testified that, as of August 30, 2008, Ms. Joyner had an account at Bancorp South. She said that the defendant did not have an account with the bank. Ms. Jordan identified photographs taken by the ATM machine at the Hamilton Hills branch on Old Hickory Boulevard. The photographs bore the branch location, the branch identification number, the date, the time, the last four digits of the associated checking account number, the transaction attempted, and the account's balance. She said that someone would need the personal identification number associated with the card in order to successfully complete a checking account balance inquiry. Ms. Jordan testified that the photographs indicated that someone had used Ms. Joyner's ATM card to attempt a checking account balance inquiry and used the same card to attempt to access accounts not connected to the card. The ATM took the photographs at 2:14:27 a.m., 2:14:42 a.m., 2:15:21 a.m., and 2:15:37 a.m.

On cross-examination, Ms. Jordan confirmed that the individual in the photographs did not take any money from Ms. Joyner's account. She said that someone discovered Ms. Joyner's card on a window ledge at the Bancorp South branch on University Boulevard.

On re-direct examination, Ms. Jordan agreed that "no money was taken from the account[] because there was no money in the account."

Commissioner Melinda Wyatt, of the Jackson Police Department's auto theft unit, testified that she received the ATM photographs from the bank and reviewed them at the police department. Another investigator identified the individual in the photographs as the defendant, with whom she went to school. Commissioner Wyatt interviewed the defendant after his arrest. She advised him of his rights, and he indicated that he wished to waive his rights and give a statement. The defendant told her that he found an ATM card "hanging in the slot" at the Hamilton Hills branch. He pushed the card into the slot, but the card did not work because he did not have the personal identification number. He threw the card to the ground. He stated that he did not know what happened to the card afterwards. Commissioner Wyatt testified that the defendant identified himself as the person in the photographs from the Hamilton Hills branch.

Officer Byron Maxidon, a patrol officer with the Jackson Police Department, testified that he was patrolling night club parking lots on September 21, 2008, when he observed an individual driving through the parking lot at 63 Heritage Square and looking into the vehicles parked in the lot. Officer Maxidon ran the license plate number on the vehicle and learned that the registered owner, the defendant, had an active warrant for his arrest. Officer Maxidon stopped the vehicle, and the driver identified himself as the defendant. Officer

Maxidon testified that he searched the defendant's vehicle and discovered a flashlight, a crowbar, and a screwdriver wrapped in a towel that had glass shards on it. He said that he associated those tools with burglaries based on his training and experience.

Sergeant Jeff Shepherd, of the Jackson Police Department's auto theft unit, testified that he was present with Commissioner Wyatt when she interviewed the defendant. He corroborated her testimony regarding the defendant's statement. Sergeant Shepherd further testified that the Hamilton Hills branch of Bancorp South is located within "a couple hundred yards" of Tequila Joe's night club. He said that the tools found in the defendant's car were consistent with burglary tools, especially the screwdriver wrapped in a towel that had glass shards on it. He explained that the towel would protect a burglar's hands from glass broken with the screwdriver.

Following closing arguments and deliberations, the jury was unable to return a verdict as to count one, vehicle burglary. The jury found the defendant guilty of identity theft, a Class E felony, and theft of property under $500, a Class A misdemeanor. The trial court sentenced the defendant to eleven months, twenty-nine days in the county jail with a release eligibility of 75% for the misdemeanor conviction concurrent with twelve years as a career offender in the Tennessee Department of Correction with a release eligibility of 60% for the felony conviction. The state dismissed the vehicle burglary charge.

**Analysis**

I. Sufficiency of the Evidence

For his first issue, the defendant argues that the evidence was insufficient to support his conviction for identity theft. Specifically, he contends that "the State failed to show any proof that the [defendant] intended to do anything other than illegally possess or fraudulently use the victim's debit card."

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the

strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

The Identity Theft Victims' Rights Act of 2004, codified in Tennessee Code Annotated section 39-14-150, defines identity theft as knowingly obtaining, possessing, buying, or using the personal identifying information of another with the intent to commit any unlawful act and without (a) "the consent of such other person" or (b) "the lawful authority to obtain, possess, buy or use that identifying information." Tenn. Code Ann. § 39-14-150(b). The code states that

> "personal identifying information" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including:
>
> > (1) Name, social security number, date of birth, official state or government issued driver license or identification number, alien registration number, passport number, employer or taxpayer identification number;
> >
> > (2) Unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;
> > (3) Unique electronic identification number, address, routing code or other personal identifying data which enables an individual to obtain merchandise or service or to otherwise financially encumber the legitimate possessor of the identifying data; or
> >
> > (4) Telecommunication identifying information or access device.

Tenn. Code Ann. § 39-14-150(e).

In this case, the evidence, taken in the light most favorable to the state, shows that the defendant knowingly possessed and used Ms. Joyner's debit card without her consent.

Photographs from the ATM show the defendant using the card to initiate a transaction. The bank's vice-president testified that the card bore Ms. Joyner's name, the card number, and a magnetic strip that was encoded with the card number and security features. This testimony was sufficient for a jury to conclude that the debit card contained personal identifying information. In our view, the evidence was sufficient for any rational jury to find the defendant guilty of identity theft.

## II. Jury Charge

The defendant argues that the trial court committed plain error by failing to charge the jury with instructions regarding fraudulent use of a credit card as a lesser included offense of identity theft. The state responds that the defendant waived this issue by not requesting the instruction in writing and that failure to charge the jury with fraudulent use of a credit card as a lesser included offense did not amount to plain error.

In this case, the defendant failed to make a written request for this jury instruction, but he did raise it in his motion for new trial. The trial court denied the motion for new trial, ruling that it properly charged the jury. However, failure to instruct on a lesser included offense was not a proper issue for a motion for new trial due to the lack of a written request, nor is it a proper issue for appeal. "Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal." Tenn. Code Ann. § 40-18-110(c). The Tennessee Supreme Court has held that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006). However, our supreme court also made clear that when a defendant waives a jury instruction for failure to request it in writing, an appellate court may still review the issue for plain error. *Id.* at 230.

An error which has affected the substantial right of a defendant may be noticed at any time in the discretion of the appellate court where necessary to do substantial justice. *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). "Plain error" or "fundamental error" is recognized under Tennessee Rule of Appellate Procedure 36(b). *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). Some errors are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

There are five factors which must be present for a court to determine if "plain error" exists:

(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (citing *Adkisson*, 899 S.W.2d at 641-42). Complete consideration of all five factors is unnecessary if at least one is absent. *Id*. at 283. Furthermore, the plain error must be such that it probably changed the outcome of the trial. *Adkisson*, 899 S.W.2d at 642.

In this case, the defendant has not shown that he did not waive the issue for tactical reasons. The record shows that the defendant had an opportunity to confer with the trial court about the jury instructions and suggests that defense counsel might have discussed with the assistant district attorney general whether fraudulent use of a credit card could be charged as a lesser included offense. In the motion for new trial hearing, defense counsel conceded that she did not have any statutory or case law to support her assertion that fraudulent use of a credit card was a lesser included offense, which suggests that this lack of authority was the reason she did not pursue the instruction before the court charged the jury. The defendant had the opportunity to request the inclusion of this specific instruction and has not shown that he failed to make the request for any reason other than tactical reasons. Therefore, we conclude that the defendant has not shown that the trial court committed plain error by not instructing the jury regarding fraudulent use of a credit card as a lesser included offense of identity theft. The defendant is without relief as to this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____

J.C. McLIN, JUDGE

-7-