# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs  September 18, 2012

## STATE OF TENNESSEE v. CHRISTOPHER M. MIMMS

**Appeal from the Circuit Court for Montgomery County**
**No. 40901172  Michael R. Jones, Judge**

---

**No. M2011-02712-CCA-R3-CD - Filed February 8, 2013**

---

The defendant was convicted of selling more than 0.5 grams of cocaine, a Class B felony, and selling more than 0.5 grams of cocaine within a school zone, a Class A felony. On appeal, the defendant claims that the evidence was insufficient to support his conviction of the latter charge.  The defendant also claims that the trial court erred by failing to instruct the jury with respect to lesser included offenses and by permitting the State to ask questions concerning prior drug transactions between the defendant and a confidential informant.  After review, we conclude that the evidence is sufficient to support the defendant's convictions and that his remaining claims have been waived.  We affirm the judgments of the trial court accordingly.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**.

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Christopher G. Clark (on motion for new trial and appeal) and Adrienne Fry (at trial), Clarksville, Tennessee, for the appellant, Christopher M. Mimms.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; John W. Carney, Jr.,  District Attorney General; and Helen Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On September 8, 2009, a Montgomery County grand jury returned an eight count indictment charging the defendant, Christopher M. Mimms, with eight drug-related crimes: two counts of selling more than 0.5 grams of cocaine in violation of Tennessee Code Annotated section 39-17-417, two counts of delivering more than 0.5 grams of cocaine in violation of Tennessee Code Annotated section 39-17-417, one count of selling more than 0.5 grams of cocaine within a school zone in violation of Tennessee Code Annotated section 39-17-417 (as enhanced by Tennessee Code Annotated 39-17-432), one count of delivering more than 0.5 grams of cocaine within a school zone in violation of Tennessee Code Annotated section 39-17-417 (as enhanced by Tennessee Code Annotated 39-17-432), one count of possession of more than 0.5 grams of cocaine in violation of Tennessee Code Annotated section 39-17-417, and one count of possession of drug paraphernalia in violation of Tennessee Code Annotated section 39-17-425. The defendant was tried by jury on March 21-23, 2011.

At the defendant's trial, Mr. Michael Vincent testified that he agreed to work with police as a confidential informant after he was arrested at a crack house, in exchange for having a pending charge (of possession of drug paraphernalia) against him dropped. He testified that he knew the defendant as "C-Whiz" and that he informed Agent Evans of the Clarksville Police Department that he was able to purchase crack cocaine from this individual. He testified that he made contact with the defendant by cell phone on April 1, 2009, and this call was recorded. He testified that he arranged to purchase $150 of crack cocaine from the defendant at this time and that he and the defendant mutually agreed to meet at a Minit Mart on Crossland Avenue in Clarksville, Tennessee.

Mr. Vincent testified that prior to meeting with the defendant, he was outfitted with a recording device, and his vehicle was searched by police to ensure that it contained no existing contraband. He testified that he proceeded to the Minit Mart, but the defendant changed the location of the deal to a Chinese buffet. Mr. Vincent testified that after he arrived at that location, the defendant came out of the restaurant after several minutes, went to his own car, and then joined Mr. Vincent in his car. Mr. Vincent testified that they exchanged small talk and then he "handed [the defendant] the money and he handed me the product." Mr. Vincent testified that the defendant offered to sell him the remaining crack cocaine that he had on him for an additional twenty dollars, but he declined the offer because he did not have any additional money. He testified that the defendant did not provide him with the additional cocaine on that occasion. He testified that the defendant never provided him with any cocaine without receiving some form of payment.

Mr. Vincent testified that after the exchange, he returned to the police station. He testified that he was followed by police for the entire distance and that he did not make any stops. He testified that after arriving at the station he relinquished custody of the crack

cocaine to Agent Evans. He testified that he was searched afterward, and no additional contraband was found.

Mr. Vincent testified that on April 2, 2009, he again contacted the defendant at the behest of law enforcement to arrange for the purchase of cocaine. Mr. Vincent again testified concerning the steps taken by police to monitor the transaction, including wiring him for audio and searching him before and after the transaction. Mr. Vincent again testified that he and the defendant initially agreed to meet at "the store" (the Minit Mart on Crossland Avenue), but the defendant again changed the location. Mr. Vincent testified that they ultimately met at a gas station at a Kroger grocery store on Dover Crossing Road. Mr. Vincent testified that on this occasion the defendant entered his car and sold him $100 worth of crack cocaine.

Mr. Vincent testified that on April 9, 2009, he called the defendant again at the behest of Agent Evans and requested to purchase another $150 worth of crack cocaine. He testified that, once again, he was searched and outfitted with a recording device. He testified that on this occasion, he actually met with the defendant at "the store," where he got into the defendant's vehicle and they completed the exchange.

Mr. Vincent testified that on April 10, 2009, he called the defendant at the request of Agent Evans and requested to purchase additional drugs. He did not specify any particular amount of money or drug quantity in this phone call. He testified that they initially agreed to meet at "the store," but the defendant switched the location to a Kroger grocery store. He testified that was not wired for audio and was not asked to physically meet with the defendant on this occasion.

While on the stand, Mr. Vincent testified that he had listened to various CDs containing audio recordings made of his phone calls to—and interactions with—the defendant, and these were entered into evidence and played for the jury. He also identified numerous photographs that were taken by police surveillance units during the drug transactions, and these were entered into evidence as well. Mr, Vincent testified that in addition to having the pending drug charge against him dropped, he received a bus ticket home in return for his assistance to the police.

On cross-examination, Mr. Vincent denied that he met the defendant while working at a McDonald's restaurant. He denied that he and the defendant were friends. He denied that he and the defendant had gone to bars together in Clarksville to pick up girls. He admitted that the defendant had been to his house, but he denied that he and the defendant had played video games together there. He admitted that he had smoked cigarettes with the defendant but denied that he and the defendant had smoked crack cocaine together. Mr.

Vincent acknowledged that the defendant had offered to help get him a job, and made a reference to the two of them working together. He denied that he believed that the defendant was an "easy target" because he knew that the defendant had a drug problem. Mr. Vincent admitted that he had worked as a "snitch" for law enforcement in the past and that he was familiar with the way the system worked. He denied that his obligation to law enforcement ended on April 9 because he had "finally lured [the defendant] to that store."

On re-direct examination, Mr. Vincent was asked why he had only had to ask the defendant to meet him at "the store" when he set up the first drug transaction, rather than specifying the Minit Mart by name. The defendant responded that the location was "where we had generally met in the past." When asked by the State, "for what purpose?" the witness testified, over the defense's objection based on relevance, that the location was "a common place we both knew to go." When asked "[f]or what?" without any further objection by the defendant, Mr. Vincent responded, "[f]or the purchase of crack cocaine." Mr. Vincent further testified without objection from the defendant that the police were not involved in these prior purchases in any way. Mr. Vincent added that it was almost impossible for an individual to buy drugs from someone who had not sold them drugs in the past.

Agent Will Evans of the Clarksville Police Department testified that he came into contact with Mr. Vincent and was informed that Mr. Vincent could purchase drugs from an individual named "C-Whiz." He testified that on April 1, 2009, he directed the defendant to arrange a drug transaction with "C-Whiz." He testified that he provided Mr. Vincent with $150 in bills after photocopying these bills for purposes of recording their serial numbers. He testified that he wired Mr. Vincent and his vehicle for audio. He testified that he searched Mr. Vincent for any additional contraband and money both before and after the drug transaction.

Agent Evans testified that he, along with five or six other officers, conducted audio and visual surveillance of Mr. Vincent as he drove to and from his meeting with the defendant. He testified that following the meeting, he field tested the suspected contraband that was given to him by Mr. Vincent, and it tested positive for cocaine. He testified that he then sent the suspected contraband to the Tennessee Bureau of Investigation ("TBI") laboratory for more comprehensive testing.

Concerning the meeting on April 2, 2009, Agent Evans testified that he followed the same general procedures that he had used the day before. He testified that Mr. Vincent requested to purchase $100 worth of crack cocaine from the defendant on this occasion. He testified that the substance given to him by Mr. Vincent following the transaction field tested positive for cocaine, and he again sent it to the TBI laboratory for further analysis. He also testified concerning several photographs that were taken by police during this transaction.

With respect to the transaction on April 9, 2009, Agent Evens testified that he followed the usual procedure with respect to the controlled purchase of the cocaine. He testified that he gave Mr. Vincent $150 after photocopying the bills to record their serial numbers. He testified that he along with five to seven additional officers conducted surveillance during the drug transaction. He testified that the transaction occurred at a Minit Mart, and that following the transaction, it was brought to his attention that the location was possibly within a school zone.

Agent Evans testified that he used "Google Earth" to determine the distance from the Minit Mart to the school property. While on the stand, Agent Evens was shown "the download" of the search that he did on "Google." He testified that this download illustrated the edge of the Minit Mart property (located at the corner of Crossland Avenue and Greenwood Avenue) to the edge of the school property. He identified the location of the school and the drug transaction on this "download." He testified that the "download" reflected that the drug transaction was within one thousand feet of the school. He also testified that he "walked th[e] distance off" as a normal person would walk from the far end of the Minit Mart to the edge of the school's property, which was 426 feet, to the front drive of the school, which was 712 feet, and to the front door of the school, which was 985 feet.

Agent Evans testified that on April 10, 2009, he requested that Mr. Vincent call the defendant to purchase additional drugs. He testified that after learning from Mr. Vincent that the defendant was at a Kroger grocery store, he and other officers proceeded to that location, where they found the defendant sitting in his car by himself. They arrested the defendant and searched his vehicle, where they found a baggie containing a white crystalline rock-like substance that field-tested positive for cocaine. When they searched the defendant's wallet, they found a ten dollar bill matching the serial number of a ten dollar bill that they had photocopied before the drug transaction on April 9, 2009. Agent Evans testified that the digital face of the defendant's cell phone displayed the name "C Whiz."

Agent Cassandra Beavers of the Tennessee Bureau of Investigation was qualified as an expert in the weighing and testing of drugs. She testified that she received a sample on April 3, 2009, from Agent Will Evans, and she tested this sample and determined that it contained 0.6 grams of cocaine base. She testified that she received a second sample on that same date from Agent Will Evans, and after testing she also determined that this sample contained 0.6 grams of cocaine base.

Special Agent Denotria Patterson of the Tennessee Bureau of Investigation was also qualified as an expert in forensic chemistry. Agent Patterson testified that she had tested a substance identified to her as coming from a drug transaction conducted on April 9, 2009, and determined that the substance consisted of 0.5 grams of cocaine base. She testified that

she tested a substance represented to her as coming from the defendant's vehicle on April 10, 2009, and determined that it contained 4.8 grams of cocaine base.

Mr. James Robert Sumrell, the Chief Operations Officer for the Montgomery County School system, testified that he was familiar with the Norman Smith Elementary School and that the school was located at 740 Greenwood Avenue. He testified that the school serviced children from pre-Kindergarten to the Fifth Grade, and it was in operation on April 9, 2009.

Following this testimony, the State rested, and the defendant took the stand in his own defense. The defendant testified that he was the father of an eleven year old son and a seven year old daughter. He testified that he was close friends with Mr. Vincent and that the two shared a number of mutual friends. He testified that they used to go over to each other's houses frequently. He testified that they drank together and smoked crack cocaine together.

The defendant testified that he provided crack cocaine to the defendant on occasion and that the defendant provided crack cocaine to him on occasion, because they were "smoking partners." He testified that they frequently did this together on weekends. He testified that Mr. Vincent was lying when he acted like he did not know him. He testified that he never sold drugs.

On cross-examination, the defendant acknowledged that his employer tested for drugs and that he had never failed a drug test. However, he asserted that such testing only occurred if there was a workplace injury.

Following this testimony, the defense rested, the parties gave closing arguments, and the jury was instructed. Following deliberations, the jury returned with a verdict of guilty with respect to counts I & V, finding that the defendant was guilty of selling 0.5 grams or more of cocaine and that the defendant was guilty of selling 0.5 grams or more of cocaine in a school zone. The jury deadlocked on the remaining counts.[1]

On September 16, 2011, the defendant was sentenced to ten years for selling more than 0.5 grams of cocaine and to fifteen years for selling more than 0.5 grams of cocaine in a school zone. The trial court ordered these sentences to be served concurrently. The defendant filed a motion for new trial on October 13, 2011. The trial court denied the defendant's motion on November 29, 2011. The defendant filed a notice of appeal on December 12, 2012. We proceed to consider his claims.

## ANALYSIS

---

[1] Count eight was dismissed by the State prior to trial.

The defendant claims that the evidence presented at trial was insufficient to support his conviction for selling 0.5 grams or more of cocaine in a school zone. The defendant also claims that the trial court erred by failing to instruct the jury on lesser included offenses with respect to both counts, and by permitting the State to ask questions concerning prior drug transactions between the defendant and the confidential informant. For the reasons that follow, we affirm the judgments of the trial court.

**I.**

When a defendant challenges the sufficiency of the evidence, the standard of review on appeal is well-known. As our supreme court recently explained:

> Appellate courts evaluating the sufficiency of the convicting evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction. *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011). This Court affords the State the strongest legitimate view of the evidence presented at trial and the reasonable and legitimate inferences that may be drawn from the evidence. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). This Court neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury. *Bland*, 958 S.W.2d at 659. Circumstantial and direct evidence are reviewed under the same standard of review. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt. *Id.* at 381.

*State v. Wagner*, No. M2010-00992-SC-R11-CD, 2012 Tenn. LEXIS 746, at **18-19 (Tenn. Oct. 12, 2012).

The defendant in this case was convicted of violating Tennessee Code Annotated 39-

17-417, which states in relevant part: "It is an offense for a defendant to knowingly . . . [s]ell a controlled substance." T.C.A. 39-17-417(a) (2009). A "violation of subsection (a) with respect to . . . Cocaine . . . is a Class B felony if the amount involved is point five (.5) grams or more of any substance containing cocaine . . . ." T.C.A. 39-17-417(c)). However, "[a] violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private . . . school . . . shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." T.C.A. § 39-17-432(b)(1). An offender must also actually serve at least the minimum sentence for his appropriate range for any such violation. *See* T.C.A. §39-17-432(c).

The defendant does not challenge the sufficiency of the convicting evidence with respect to selling more than 0.5 grams of cocaine on April 9, 2009, and we note that evidence sufficient to support the jury's findings with respect to each of the essential elements of this crime is contained in the direct testimony of Mr. Vincent. Rather, the defendant challenges the enhancement of his sentence pursuant to section 39-17-432. The defendant claims that the State failed to prove beyond a reasonable doubt that this sale occurred within 1000 feet of real property containing a school.

In this regard, the defendant claims that the Google "download," or computer generated map, which was relied upon by Agent Evans during his direct testimony on the subject was entered into evidence without foundation. The defendant acknowledges that there was no contemporaneous objection to the introduction of this "download" at trial, but urges this court to ignore the defendant's waiver and reverse the defendant's conviction using the "plain error" standard of review. *See State v. Adkission*, 899 S.W.2d 626, 636 (Tenn. Crim. App. 1994) ("[T]his Court may, in the exercise of its discretion, consider an issue which has been waived due to a procedural default . . ."). After striking the evidence provided by the "download" pursuant to plain error, the defendant would have this court further examine the remaining testimony of Agent Evans, in which he claims to have also "walked off" the distance at issue. The defendant would have this court deem this remaining testimony insufficient because Agent Evans did not further explain what he meant by the term "walk off," and more specifically did not explain what, if any, tool was used to measure the distance between the property lines.

However, this court is not inclined to ignore the defendant's failure to object to the admission of the Google "download" and to the testimony of Agent Evens concerning to it. Prior to reviewing a decision under the plain error standard, this court must find that five factors are satisfied, including that consideration of the error is "necessary to do substantial justice." *Id.* at 639. We do not believe that ignoring the defendant's waiver is necessary to accomplish substantial justice in this case. The record reflects that the necessary distance

was established by the State at trial using a "belt-and-suspenders" approach; the State initially calculated the distance using a computer, and then checked the distance thus obtained by physically traversing it. Agent Evans testified that using both approaches the distance between the Minit Mart and the school property was less than 1000 feet.

While Agent Evans did not specify the precise tool that he used to measure the distance between the two locations while he was physically walking it off, we do not deem this omission fatal to the State's case. There are numerous tools available to law enforcement and the general public that can be used to calculate a distance while physically walking it, and it may fairly be inferred from Agent Evan's testimony that he calculated the distance using one of them. If the defendant wished to challenge the specific method used by Agent Evans to measure the distance at issue while he was walking it off, he was free to explore the issue on cross-examination. The defendant elected not to do so.

Finally, the defendant urges that Agent Evan's testimony is insufficient to establish that the April 9, 2009, drug transaction occurred in a school zone because he erroneously discussed only the distance between the two property lines (*i.e.* the distance between the school's property line and the property line of the Minit Mart), rather than the distance from the drug transaction to the school's property line. After carefully reviewing the record and relevant exhibits, we believe that the defendant has misinterpreted Agent Evan's testimony in this regard. It appears to us from his testimony that Agent Evans calculated the distance between the "far" end of the Minit Mart property line to the property line of the school, not the "near" end of the Minit Mart property to the property line of the school. Given that record evidence fully establishes that the drug transaction occurred somewhere on the Minit Mart property, it appears likely that Agent Evans thus "spotted" the defendant an unknown distance (*i.e.* the distance from the actual drug transaction to the "far" edge of the Minit Mart property) in conducting his calculations. Nonetheless, he testified that the distance at issue was 426 feet. Given that the enhancement provided for in section 39-17-432 would apply to distances as great as 1000 feet, whether or not the distance involved in this case sufficed to qualify under the statute was not a close issue.

Although it was not necessary to do so (as section 39-17-432 requires only that the drug transaction at issue occur within 1000 feet of "real property that comprises a public or private . . . school," which implies that the critical measurement for legal purposes involves the edge of the school's property line nearest to the drug transaction), Agent Evans testified that the front drive of the school, and even the school's front door, were also within 1000 feet of the far edge of the Minit Mart property. This testimony further supports the conclusion that this was not a close issue. The defendant's claim that the evidence is insufficient to support his conviction for selling more than 0.5 grams of cocaine within a school zone is denied.

## II.

The defendant claims that the trial court erred by failing to instruct the jury on lesser included offenses. According to the defendant, the trial court instructed the jury with respect to simple possession on Count 2 of the indictment (pertaining to the delivery of a controlled substance), but not Count 1 of the indictment (pertaining to the sale of a controlled substance). According to the defendant, the trial court verbally instructed the jury: "If you will remember, I charged you earlier that delivery and sale are alternative charges; therefore, I have only put the casual exchange under the delivery part, but it would apply in counts one and two, together." The defendant claims that this additional instruction "was not included in the trial court's charge to the jury that they were able to take with them into deliberations." The defendant makes the same argument with respect to Count 5 and Count 6, which were also alternative counts involving the delivery and sale of a controlled substance. The defendant claims that simple possession is a lesser included offense of the sale and delivery of crack cocaine, and that the evidence supported an instruction on this score because he testified at trial that he and the confidential informant were close friends who had a history of sharing drugs.

The State claims that the defendant has waived this issue by failing to include a complete copy of the transcript of the jury instructions and verdict forms, and by failing to make a contemporaneous objection at trial. *See State v, Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993) ("Where the record is incomplete and does not contain a transcript of proceedings relevant to an issue presented for review . . . an appellate court is precluded from considering an issue."); Tenn. R. App. P. 24(b); Tenn. R. App. P. 36(a). We agree. Nor may we review this issue under the plain error standard, as the record before us does not clearly establish what happened in the trial court. *See, e.g., Adkisson*, 899 S.W.2d at 641. The defendant's claim that the trial court erred by failing to charge the jury concerning lesser included offenses is denied.

## III.

The defendant claims that the trial court erred by permitting the State's confidential informant to testify concerning prior drug transactions between himself and the defendant. In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. Rule 404. Evidence of prior bad acts is, however, admissible for other purposes,

provided certain procedural safeguards are met. *See id.* The defendant argues that the State impermissibly solicited testimony concerning the defendant's prior drug transactions in order to establish that he was a drug dealer, and therefore that he more likely sold drugs on the date in question. The defendant claims that the admission of this testimony violated Rule 404(b), and his conviction should be reversed accordingly.

The defendant specifically complains of the certain testimony given by Mr. Vincent during his re-direct examination. During Mr. Vincent's cross-examination, defense counsel suggested that the witness had enticed the defendant into selling drugs at the Minit Mart because it was located inside a school zone. During Mr. Vincent's re-direct examination, the following exchange took place:

> Q: You meet at the Mini[t] Mart?
> A: Un-huh (indicating yes by sound).
> Q: Why did you – you didn't say meet me at the Mini[t] Mart on Crossland, you said meet me at the store, is that not what you said?
> A. Yes ma'am.
> Q: And why was that the only thing you needed to say?
> A: Because that is where we had generally met in the past.
> Q: For what purpose –
>> Defendant: Objection.
>> Witness: For a purpose –
>> Defendant: Relevance –
>> ADA: She opened the door, Your honor.
>> Court: Overrule the objection. Go ahead.
> A: [I]t was the place where we had met in the past and it was the – a common place that we both knew to go.
> Q: For what?
> A: For the purchase of crack cocaine.

The record reflects that the defendant did not raise a contemporaneous objection to the testimony at issue on either undue prejudice or Rule 404(b) grounds. The only objection raised by the defendant during this portion of the trial was one based on relevance. This objection was properly overruled, as the testimony was plainly relevant to the subject matter of the case. Moreover, the defendant failed to raise any objection whatsoever to the particular question "[f]or what," which was the question that in fact that elicited the questionable material.

The record reflects that the defendant did not object to the testimony at issue as character evidence at any point during the trial. The issue was raised for the first time in the

defendant's motion for a new trial.  Because of the defendant's failure to make a proper objection, no record has been developed in the court below from which this court might properly analyze the Rule 404(b) issue.  "This court has concluded that when a lack of an objection prevents the development of the record, rarely will plain error review extend to an evidentiary issue." *State v. Dennis Marshall*, No. W2011-00742-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 786, at *33 (Tenn. Crim. App. Sept. 27, 2012).  The defendant's claim that the trial court erred by permitting the State to question Mr. Vincent concerning prior drug transactions with the defendant is denied.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE